933 A.2d 1274

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. THOMAS LYKES, DEFENDANT–APPELLANT.

Argued September 11, 2007—Decided November 5, 2007.

*Janet A. Allegro,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Joie D. Piderit,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney; *Susan B. Gyss,* Assistant Hudson County Prosecutor, on the letter in lieu of brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

Two plainclothes Jersey City police officers observed defendant Thomas Lykes purchasing what was later determined to be four vials of cocaine from his co-defendant Daniel Veal. Defendant claims that his subsequent trial was tainted in two respects. First, defendant claims he improperly was impeached by the use of a prior conviction for possession of cocaine, the use of which had been deemed too remote and, hence, inadmissible. Second, defendant alleges that the trial court's response to the jury's question in respect of defendant's prior knowledge of cocaine was in error.

Because defendant placed his knowledge as to the contents of the vials directly at issue, *N.J.R.E.* 404(b) does not bar the limited

impeachment use of defendant's admission of having earlier held cocaine vials and that the questions allowed in this area were proper. Also, taken as a whole, the trial court's response to the jury's question in respect of defendant's knowledge as to the contents of the vials—that is, whether it was necessary that the State prove that defendant knew the vials contained cocaine or whether the State's burden, instead, was that the vials generically contained controlled dangerous substances—was proper. We therefore affirm the judgment of the Appellate Division.

I.

On July 26, 2000, Jersey City police officers Louis Mecka and Roosevelt Cumberbach, dressed in plain clothes and driving an unmarked vehicle, were patrolling an area known for its drug activity. At approximately 8:45 p.m., Mecka and Cumberbach saw defendant approach Veal, who was standing at the corner of Astor Place and Monticello Avenue. The officers observed defendant and Veal engage in a brief conversation, followed by defendant handing money to Veal.

While defendant remained at the corner, Veal walked to a nearby tree, placed several small objects at the base of the tree, and returned to the corner. Defendant then walked to the tree, retrieved what had been left behind by Veal, placed the objects in his pants pocket, and continued walking. Believing a drug transaction had taken place, Mecka and Cumberbach radioed for assistance and, as uniformed officers appeared, Mecka stopped defendant at the next corner. When stopped, defendant reached into his pocket and retrieved four vials containing what was later determined to be cocaine. Defendant was arrested [1] and later charged with one count of third-degree possession of a controlled

---

[1] Co-defendant Veal also was arrested, but not until a week later. Defendant and Veal were tried together, but the jury was unable to reach a verdict in respect of Veal, resulting in a mistrial as to him. The record does not disclose whether Veal was retried or, if so, to what result.

dangerous substance (cocaine), in violation of *N.J.S.A.* 2C:35–10(a)(1).

■ The day before the jury was selected, the State advised the trial court that defendant had two prior convictions that might be used to impeach him: a 1990 conviction for third-degree possession of cocaine, the same crime for which defendant was being tried; and a 2000 conviction for fourth-degree resisting arrest, in violation of *N.J.S.A.* 2C:29–2(a)(2). The trial judge instructed both the prosecution and the defense to confer on the matter and, if necessary, the trial court would conduct a *Sands/Brunson* hearing.[2] The following day, after the jury was selected and sworn, but before opening statements were delivered, the trial court conducted a *Sands/Brunson* hearing. Acknowledging that "[t]he State offered voluntarily to sanitize the convictions pursuant to [*Brunson, supra*] and indicated [it] would introduce the date, the degree of the crime for the conviction, and the sentence[,]" the trial court nevertheless ruled that "the 1990 [cocaine possession] conviction is remote and cannot be used to impeach [defendant's] credibility" but that "the State may indeed use [defendant's 2000 resisting arrest conviction] to impeach [defendant's] credibility and may use it in an unsanitized version since it is not at all like the charge [defendant] is facing today."

---

[2] *State v. Sands*, 76 *N.J.* 127, 386 A.2d 378 (1978); *State v. Brunson*, 132 *N.J.* 377, 625 A.2d 1085 (1993). The *Sands/Brunson* analysis requires a two-tiered approach. First, under *Sands*, a trial court must make the determination now codified in *N.J.R.E.* 609: whether "[f]or the purpose of affecting the credibility of any witness, the witness' conviction of a crime shall be admitted unless excluded by the judge as remote or for other causes." Once the trial court determines that a prior conviction is admissible under *N.J.R.E.* 609, the trial court must then determine whether it is presented with a "case[ ] in which a testifying defendant previously has been convicted of a crime that is the same or similar to the offense charged[.]" *Brunson, supra*, 132 *N.J.* at 391, 625 A.2d 1085. If so, the testifying defendant's prior conviction must be "sanitized," that is, "the State may introduce evidence of the defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which defendant was convicted." *Ibid.*

Following that determination, the parties presented their opening statements to the jury. Conceding that defendant was observed picking up the vials and had the vials in his possession when arrested, defendant's opening statement focused on the following:

the important thing about [defendant] is in order to be found guilty of possession of the drug you got to know that it's a drug.

You have to have knowledge that what you're picking up is a drug. When my client picked those vials up it could have been a rat poison, it could have been—it could have been anything. It could have been oregano, who knows.

So *he didn't know what was in those vials.*

[ (Emphasis supplied).]

The following day, defendant testified and denied having had any conversation with Veal or purchasing any drugs from him. Defendant explained that, while walking along Astor Place, as he "approached the school[, r]ight about the middle of the school I observed four objects . . . laying on the ground—from one another, separate." He testified that "when I got closer I picked—I looked at it, it was four vials." Defendant demonstrated that the "four vials [were] approximately a foot or two apart from each other in a more or less straight line" and that "[a]s I approached—[I] picked up one, walked down a little further got the other one, walked a little bit further found the third one, walked up—picked up the fourth one." Defendant then testified on direct examination as follows:

Q. When you picked up these vials *did you know what it was that was in them?*

A. *No. I suspected that it could have been drugs or dangerous substances, rat poison, anything* because—

Q. Is this unusual to find drugs lying on the street in this area?

A. Every now and then you would find something like that because sometime or another somebody probably dropped something or you can find empty vials. Possible—syringes, empty marijuana bags all over the street. So that ain't nothing new especially in that area.

. . .

Q. What were you going to do with [the vials]?

A. I was going to take a look at it and walk by the sewer and just throw it by the sewer, down there.

Q. What was the reason why you would do that?

A. Because I have children and they also go to public schools and I wouldn't like them to find any drug substance or anything that looked like drug substance around the school or anything because people does-children does have a curiosity to pick up things.

[ (Emphasis supplied).]

Before commencing her cross-examination of defendant, the prosecutor asked to approach the bench. Once at sidebar, the prosecutor explained that defendant had "testified as to claiming that he doesn't know what the substance he picked up on the street was[,]" a claim contradicted by defendant's earlier, but barred, cocaine possession conviction, as well as by his admitted long-term and repeated cocaine use. The trial court reasoned that the State was "entirely entitled to ask [defendant] about his knowledge, the lack of knowledge, or basis for any knowledge about whether what was in the vials was drugs or not drugs." Instructing the State to steer clear of defendant's 1990 cocaine possession conviction, the trial court ruled that the State was "entitled to ask [defendant] whether or not he has ever seen drugs that look like that before, whether he's familiar with what cocaine looks like." The trial court made clear, however, that "references specifically to the conviction or anything like that [are] inappropriate[.]"

Complying with those instructions, the State cross-examined defendant as follows:

Q. Are you familiar with how cocaine is packaged?

A. They have various packages, you know, what you see on television and things, how people do.

Q. *Do you have personal knowledge of how cocaine is packaged?*

A. *No, I don't.*

Q. You've never seen cocaine before?

A. Yes, I've seen cocaine before, yes.

. . . .

Q. Okay. *Have you personally seen vials of cocaine?*

A. *No.*

[ (Emphasis supplied).]

The State then asked whether defendant had "personally seen [full] vials of cocaine prior to [July 26, 2000, the date of the crime]"

and defendant replied, "Not to my recollection." Defendant then inconsistently testified as follows:

> Q. So prior to July 26th, 2000, it's your testimony here that you never saw full vials of cocaine?
>
> A. Just like I said, I haven't seen them before.
>
> ....
>
> Q. Before July 26th, 2000, have you ever seen full vials of cocaine?
>
> A. Yes.

Confronted with that inconsistency—whether defendant previously had seen full vials of cocaine—the State took another approach: it asked whether defendant had held full vials of cocaine in his hand. That question triggered defense counsel's objection and a request for a mistrial. According to defendant, because the act of possession of cocaine is a crime, the State intentionally was seeking to introduce impermissible other-crimes evidence in violation of *N.J.R.E.* 404(b). The trial court overruled that objection and denied defendant's mistrial application, explaining that "it's not a question of the fact that he's being asked to either say he did or did not commit a crime[.]" Instead, the trial court reasoned that "the question is ... whether or not the admission of the other crime or the testimony that could lead the jury to—believe that he committed another crime[,]" had to be gauged through the prism of whether "the probative value of the testimony is outweighed by the prejudicial effect." Ruling that the evidence was relevant and that its "probative value is [not] substantially outweighed by the risk of [ ] undue prejudice," *N.J.R.E.* 403, the trial court nevertheless explained that it would allow a single question on the subject—"whether or not [defendant] ever held a vial of cocaine in his hand before"—and would issue a limiting instruction immediately following that testimony.

The State then asked defendant whether "prior to July 26th in the year 2000 ... you ever held a vial with cocaine in it in your hand[.]" Defendant's response was direct: "Yes, I did." The trial court then instructed the jury as follows:

> Ladies and gentlemen, before we go any further, I just want to instruct you on the—the way in which you can consider the witness's last answer to that last

question because I'm allowing it to be asked and answered for a very limited purpose.

And the limited purpose is for you to consider how that answer might or might not affect the credibility or believability of the witness's prior testimony about what he thought or knew or suspected was in the ... various 4 vials when he picked them up on July the 26th.

That's the only way in which you can consider that last question and that answer. You cannot consider it in any other way. For example, you cannot, I'm instructing you, you cannot consider the fact the [defendant] said on one previous occasion he had in fact held a vial of cocaine in his hand for any kind of other purpose at all.

You could not, for example, consider that because it occurred on one other occasion that he held a vial of cocaine in his hand that, therefore, he must be guilty of having held cocaine in his hand on this occasion. You understand what I'm saying?

In other words, you cannot use the evidence of what that last question and answer [were] in any way except for the very limited purpose in which I described it for you. That is[,] whether or not it affects his believability or credibility on the issue of the picking up the items on July 26th and whether or not he had knowledge as to what they were.

That's the only purpose for which you can consider that last question and answer. Any other consideration for any other reason would be highly inappropriate by you. And I want to instruct you that way so you understand it.

Once defendant completed his testimony, the defense rested. Although defendant later conceded that the trial court's limiting instruction "was more than adequate[,]" he nevertheless renewed his motion for a mistrial, claiming that "the proper question should have been have you ever seen vials like this before, not have you held them in your hand." The trial court reaffirmed its earlier ruling, noting that "it came about really as a result of the answer of the defendant and ... it was an appropriate test of his credibility regarding what he said occurred[.]" The trial court emphasized that it "limited it significantly by telling the prosecutor that she could only ask one specific question." It noted that the limiting instruction "—and the record will reflect [it] immediately took place after the question was asked and answered because there [were] no other questions—... significantly focused [the jury] on the very limited purpose for which [it] can consider the answer." The trial court also explained that it intended to repeat that limiting instruction during its final charge to the jury.

In summation, defense counsel stated the issue succinctly: "So we're not disputing that he had in his hands cocaine. What we are disputing is that he *knowingly* had cocaine in his hands." (Emphasis supplied). Recounting defendant's testimony, he argued that

[defendant] said I didn't know what it was. I suspected it could be cocaine. And as he very candidly told you, he had seen cocaine before. He said he even held a vial of cocaine before. So he knew what cocaine was.

. . . .

My client did not actually know what was in [the vials]. Thought it could be drugs, but he wasn't sure. He did pick them up. Yes, he did pick them up. He said it was in a school area, he wanted to get them off the ground.

. . . .

Now so—so what we have here is my client admits that he was holding this stuff. He doesn't admit that he knew, knowingly—knew exactly what it was when the police stopped him. So that's the key. . . .

In respect of the specific charge against defendant, the trial court instructed the jury as follows:

The essential elements of possession of cocaine are the following. You must find beyond a reasonable doubt in order to find the defendant guilty the following.

First, that S–4 [the four vials of cocaine] in evidence is cocaine. Two, that the defendant possessed or obtained S–4 in evidence. Three, that the defendant acted knowingly or purposefully in possessing or obtaining S–4 in evidence.

You just heard me define what possession means. Obtaining means to acquire, to get, or to procure. Now in regard to this third element the State must prove, as I stated, that the defendant acted knowingly or purposely in obtaining possession of S–4.

A person acts knowingly with respect to the nature of his conduct or the circumstances if he's aware that his conduct is of such that nature or such circumstances exist or he's aware of a high probability of their existence.

A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. You can think of this in terms of knowing or with knowledge. Those are equivalent terms that have the same meaning.

Now a person acts purposely with respect to the nature of his conduct or the result of it if it [is] his conscious object to engage in that conduct of that nature or to cause such a result.

A person acts purposely with respect to the attendant circumstances if he is aware of the existence of those circumstances which he . . . believes or hopes that they exist. Purposely can be thought of [as] also meaning the words with purpose, with design[.] They're equivalent terms.

Remember as I instructed you earlier that when we speak of these concepts of knowingly and purposefully, we are speaking of conditions of the mind that cannot be seen.

The trial court also charged that "whenever I gave a limiting instruction as to how you can use certain evidence, . . . I want you to understand it's very important that you follow that instruction, use the evidence only for the very limited purpose that I've allowed it[,]" bluntly instructing the jury that "[y]ou cannot use it for any other purpose." After explaining the proper use of the proofs concerning defendant's 2000 resisting arrest conviction, the trial court explained at length that

in addition the State introduced evidence that [defendant] on a previous occasion had held a vial of cocaine in his hand. And this had occurred prior to July 26th, 2000. That's the date that the charges in this case revolve around.

Now the defendant, I want you to understand . . . is not charged with any wrongdoing or any crime regarding that prior event. And that is not at all before you for your consideration[.]

Now normally such evidence, that is evidence of conduct that took place before the date charged in the indictment, is not permitted under our rules of evidence.

Our rules specifically exclude evidence that a defendant did something on some prior occasion if it's offered only to show that he has some disposition or tendency to do wrong. And that, therefore, he must be guilty of the offenses charged in the indictment that you're considering.

Before you can give any weight to the evidence you must be satisfied that the defendant did in fact have a vial of cocaine in his hand on some prior occasion. If you're not satisfied as to that, then you must reject that question and answer entirely. That means you can't consider it at all.

However, our rules of evidence do permit evidence of some prior conduct on the part of a witness when the evidence is used for specific narrow purposes. Now in this case I allowed that question and the answer by [defendant] to be asked. That is whether or not he had ever held a vial of cocaine in his hand before July 26th, 2000, and I allowed his answer to that question.

The only purpose that you may consider that evidence for is whether or not that evidence affects [defendant's] credibility as a witness as to his testimony regarding the events of July 26th, that is the events of the day in which the indictment charges him with the crime, and his actions and his state of mind on that particular evening.

Whether this evidence affects his credibility in any way, well, that's up for you to decide. You may decide that the evidence does not affect this credibility in any way and it's not helpful to you at all. In that case you should disregard the evidence.

On the other hand, you may decide that the evidence does affect his credibility and you may use it for that specific purpose. However, you cannot use the evidence to decide that [defendant] had some tendency to commit a crime or that he is a bad person.

That is you may not decide that just because he testified that on some prior day he held a vial of cocaine that, therefore, he must be guilty of the offense for which he is charged in this indictment. That would be entirely wrong on your part.

*I have admitted the evidence only as it relates to the issue of his credibility or believability. You may not consider it for any other purpose* and you may not find that the defendant is guilty ... simply because the State offered evidence that on some point prior to July 26th he admitted that he held a vial of cocaine in his hand.

[ (Emphasis supplied).]

Jury deliberations commenced. Some time later, the jury sent out a note asking whether, as to "the charge against [defendant], does he have to know it is cocaine? Or does he have to know it is a dangerous substance (narcotics)?" After consulting with all counsel, the trial court instructed the jury as follows:

Okay. I received your note. And I'm just going to review it with you. The note says, "I would like to know if the charge against [defendant], does he have to know it is cocaine? Or does he have to know it is a dangerous substance (narcotics)?"

Here's what I'm going to address to you first of all [because] the instructions I'm giving you now are in response directly to that question. Okay.

First what I'm going to do since you used the word in both of those questions ["]know,["] I'm going to recharge you on what it means, the word knowingly or with knowledge, what that means under the charge against [defendant], that is that ... he on the day in question knowingly or purposely possessed cocaine.

So I'm going to refine for you what the law means when it uses the word knowingly or with knowledge. Okay. In regard to this element the State must prove beyond a reasonable doubt that [defendant] acted knowingly in obtaining or in possessi[ng the four vials of cocaine].

A person acts knowingly with respect to the nature of his conduct or the circumstances around it if he's aware that his conduct is of that nature or that such circumstances exist or he is aware of a high probability of their existence.

A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. Knowing or with knowledge are equivalent terms to this word knowingly.

Now you have to apply that standard which I've just given to you and determine whether or not the State has proven beyond a reasonable doubt that [defendant] on the day in question was knowingly in possession of [the four vials of cocaine] alleged by the State.

In other words, you must consider all the evidence and determine whether or not they've proven beyond a reasonable doubt under the standard that I've just given

you that ... he was in possession, it was a knowing possession, and that it was cocaine.

It would not be appropriate [to] simply conclude that ... it was knowing possession of something other than cocaine. That would not be sufficient because the State would have failed to prove an element to you. Okay.

So the determination is now with you. I've instructed you on what the word knowing means within the context of the charge of possession of cocaine.

Now you have to go back and continue your deliberations.

Defense counsel objected, claiming that the court's response to the jury question "did not specifically advise them that knowing is ... to know the nature and character of the item." The trial court overruled that objection, explaining that "I just told them that they can't find him guilty if they don't find that he knew it was cocaine."

The jury returned a guilty verdict on the sole count of the indictment against defendant, and defendant was sentenced to a term of incarceration of four years, plus additional fines and assessments.[3]

The Appellate Division, in an unpublished, per curiam decision issued by a divided panel, affirmed defendant's conviction and sentence. Overall, the majority of the panel "conclude[d] that defendant received a fair trial, and that any error was not 'clearly capable of producing an unjust result.' R. 2:10-2." It explained that "the case turned on credibility, and the jury was entitled to accept Officer Mecka's testimony, and reject defendant's testimony." Addressing whether defendant could be asked on cross-examination whether he had ever seen or held cocaine vials, the majority of the panel reasoned that "defendant's prior involvement with a vial of cocaine was relevant to the jury's assessment of defendant's credibility when he testified that he did not know what was in the vials." As the majority of the panel noted, "the evidence was relevant to a material issue in dispute, and the jury

---

[3] Defendant's arrest on the cocaine possession charge violated the probationary term he received for his 2000 resisting arrest conviction. On the violation of probation, defendant was sentenced to a concurrent term of incarceration for one year.

was given two specific and comprehensive limiting instructions, which clearly explained the limited purpose of the testimony." On that point, the panel majority highlighted that, if it was error to allow the inquiry by the State, "any error was harmless beyond a reasonable doubt, and was not clearly capable of producing an unjust result." (Citations and internal quotation marks omitted).[4]

Judge Wecker dissented. In her view, "the prosecutor's questions to defendant, respecting his prior knowledge of what a vial of cocaine looked like and whether he had ever held a vial of cocaine in his hand . . . clearly violated *N.J.R.E.* 404(b)." Judge Wecker asserted that "[t]he truthful answers defendant was effectively forced to give constituted evidence of prior wrongs or crimes that were not relevant to any material, disputed issue, and the resulting prejudice was not cured by the judge's instructions."

Based on that dissent, defendant filed an appeal as of right. *R.* 2:2–1(a)(2). Defendant also separately sought certification, which we granted "limited solely to the issue of whether the trial court properly instructed the jury in response to the jury's question in respect of defendant's prior knowledge of cocaine." *State v. Lykes,* 189 *N.J.* 105, 912 *A.*2d 1264 (2006). For the reasons that follow, we affirm the judgment of the Appellate Division.

## II.

Defendant asserts that the trial court erred when it permitted the State to question him in respect of his prior handling of cocaine. According to defendant, *N.J.R.E.* 404(b) precludes that line of questioning because the evidence of a prior bad act or other-crime permitted jurors to conclude that defendant had a propensity to commit drug offenses, proofs that offend the careful balancing test embodied in *N.J.R.E.* 403 and *State v. Cofield,* 127 *N.J.* 328, 605 *A.*2d 230 (1992). Defendant also claims that the trial court's curative instructions were insufficient to cure the error

---

[4] The panel also rejected defendant's attack on his sentence.

and, therefore, the trial court abused its discretion in denying his motion for a mistrial.

In respect of the trial court's response to the jury's question, defendant argues that the trial court erred by "simply read[ing the legal definition of "knowingly"] to a jury of lay people[,]" likely confusing and misleading the jury. Moreover, defendant submits that the trial court compounded its error by failing to reinstruct the jury after defendant's objection.

The State replies that there was no reversible error in the trial court proceedings. In the State's view, the prosecutor's questioning was proper because, once defendant claimed that he did not know what the vials contained when he picked them up from the sidewalk, but that he "suspected that it could have been drugs or dangerous substances, rat poison, anything[,]" defendant "opened the door to this line of questioning." In addition, the State contends that, even if this limited questioning resulted in some prejudicial effect to defendant, the trial court "properly sanitized the statement by giving a curative instruction" and that, based on the other evidence proffered by the prosecution, it is unlikely that the prosecutor's questioning led to an unjust verdict.

In respect of the trial court's response to the jury's question, the State asserts that there was no error because the trial court simply instructed the jury in a manner agreed upon by the parties and that, in any event, "this alleged error did not lead to the guilty verdict."

We address first the issue that gave rise to the dissent in the Appellate Division and which is before us as of right: whether the questions posed of defendant during cross-examination concerning whether he had ever seen or held vials of cocaine were impermissible prior bad acts or other-crimes evidence under *N.J.R.E.* 404(b). We then turn to defendant's certified issue: whether the response to the jury's question properly instructed the jury in respect of defendant's prior knowing possession of cocaine.

## III.

At its core, defendant asserts that any evidence of his having seen or held vials of cocaine before the date of his arrest constituted prior bad acts or other-crimes evidence that were so prejudicial as to render them inadmissible. Although we review the admissibility of prior bad acts or other-crimes evidence under the abuse of discretion standard, *State v. Darby*, 174 *N.J.* 509, 518, 809 *A.*2d 138 (2002) (citing *State v. Marrero*, 148 *N.J.* 469, 483, 691 *A.*2d 293 (1997)), we conduct a plenary review when a trial court does not analyze the admissibility of other-crimes evidence under *State v. Cofield*, 127 *N.J.* 328, 605 *A.*2d 230 (1992). *State v. Reddish*, 181 *N.J.* 553, 609, 859 *A.*2d 1173 (2004). Furthermore, appellate review of a trial court's application of the balancing test of *N.J.R.E.* 403 also is subject to the abuse of discretion standard, which sustains the trial court's ruling " 'unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide [of] the mark that a manifest denial of justice resulted.' " *Verdicchio v. Ricca*, 179 *N.J.* 1, 34, 843 *A.*2d 1042 (2004) (quoting *Green v. N.J. Mfrs. Ins. Co.*, 160 *N.J.* 480, 492, 734 *A.*2d 1147 (1999)). Applying those standards, we reject defendant's reasoning and conclusions.

The general rule concerning the inadmissibility of "prior bad acts" or "other-crimes" evidence is codified in *N.J.R.E.* 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." That *Rule*, however, goes on to explain that "[s]uch evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." Thus, unless relevant under one of the exceptions of *Rule* 404(b), the prior bad acts or other-crimes evidence is simply inadmissible. Further, even if relevant under *N.J.R.E.* 404(b), such evidence must nevertheless survive the crucible for all relevant evidence: "relevant evidence may be excluded if its probative

value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." *N.J.R.E.* 403.

Recently, in *State v. Williams*, 190 *N.J.* 114, 919 *A.*2d 90 (2007), we re-examined the paradigm by which prior bad acts or other-crimes evidence is to be gauged. We explained:

> In *State v. Cofield*, 127 *N.J.* 328, 338 [605 *A.*2d 230] (1992), this Court framed a four-pronged test to determine whether to admit other-crimes evidence for a permitted purpose under *N.J.R.E.* 404(b). The *Cofield* test requires that:
>
> 1.  The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2.  It must be similar in kind and reasonably close in time to the offense charged;
>
> 3.  The evidence of the other crime must be clear and convincing; and
>
> 4.  The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [*Williams, supra,* 190 *N.J.* at 122, 919 *A.*2d 90 (citations omitted).]

*Williams,* however, makes clear that "[t]he requirement set forth as prong two of *Cofield* . . . is not one that can be found in the language of *Evidence Rule* 404(b)[, and] *Cofield's* second prong, therefore, need not receive universal application in *Rule* 404(b) disputes." *Id.* at 131, 919 *A.*2d 90. *Williams* further cautions that the "usefulness [of *Cofield's* second prong] as a requirement is limited to cases that replicate the circumstances in *Cofield.*" *Ibid.* See also *State v. Fortin,* 189 *N.J.* 579, 600, 917 *A.*2d 746 (2007) (discussing signature-crime evidence as species of prior bad acts or other-crimes evidence, explaining that "[b]y its very nature, signature-crime evidence carries the potential for prejudice [but that, n]evertheless, signature-crime evidence may be highly probative, and in this case, we conclude that its probative value is not outweighed by its prejudicial effect"); *State v. Darby,* 174 *N.J.* 509, 519–20, 809 *A.*2d 138 (2002).

Applying the first prong of the *Cofield* standard, it is clear that defendant's familiarity with vials of cocaine, that is, defendant's knowledge of the vials' content, was acutely and directly relevant to the case against him. Starting with his opening statement,

continuing through his own testimony, and ending with his closing argument, defendant repeatedly asserted that the sole issue before the jury was not whether he possessed the vials; defendant, of necessity, conceded that he was in possession of the vials because they obviously were seized from him. Instead, defendant steadfastly urged that the sole issue in the case was whether he knew that the vials contained cocaine. According to defendant's direct testimony, when he picked up the vials, he did not know that they contained cocaine, but he "suspected that it could have been drugs or dangerous substances, rat poison, anything. . . ." To impeach that testimony as implausible, the State sought to prove defendant's familiarity with cocaine packaged in vials, something with which defendant was familiar given his 1990 conviction for third-degree cocaine possession, bearing in mind that the fact of that conviction was barred as too remote pursuant to *N.J.R.E.* 609.

A similar result obtains from the application of *Cofield's* second prong, that is, whether the prior bad acts or other-crimes evidence is "similar in kind and reasonably close in time to the offense charged[,]" *Cofield, supra,* 127 *N.J.* at 338, 605 *A.*2d 230, bearing in mind, as *Williams* teaches, that the temporal aspect of *Cofield's* second prong, depending on the circumstances, may be of limited application. *Williams, supra,* 190 *N.J.* at 131, 919 *A.*2d 90. The evidence adduced in this cocaine possession case—where defendant denied knowing that what he possessed was cocaine—is whether defendant ever saw and/or held cocaine before and, hence, knew what he admittedly picked up from the street. By any yardstick, clearly these proofs were relevant to the issues joined—defendant's knowledge that what he picked up on the street were vials of cocaine—and satisfy *Cofield's* second prong.

*Cofield's* third prong—that "[t]he evidence of the other crime must be clear and convincing[,]" *Cofield, supra,* 127 *N.J.* at 338, 605 *A.*2d 230—also is satisfied readily: defendant himself admitted, on cross-examination, to having seen and held cocaine vials previously. Finally, *Cofield's* last prong, that "[t]he probative

value of the evidence must not be outweighed by its apparent prejudice[,]" *ibid.,* also is satisfied, particularly in light of the trial court's exhaustive limiting instruction, both immediately after the testimony was adduced, as well as during the main jury charge.

In sum, then, we side with the majority of the Appellate Division panel, who concluded that "defendant's prior involvement with a vial of cocaine was relevant to the jury's assessment of defendant's credibility when he testified that he did not know what was in the vials[;]" that "the evidence was relevant to a material issue in dispute[;] and [that] the jury was given two specific and comprehensive limiting instructions, which clearly explained the limited purpose of the testimony."

## IV.

Defendant also claims that, in its response to the jury's question, the trial court erred by reinstructing the jury regarding the legal definition of "knowingly" and that the error was compounded by the trial court's refusal to reinstruct the jury according to defendant's objection. In this context, our task is to determine whether the trial court erred in its response and, if so, whether that "error undermines our confidence that the deliberative process produced a just result and the conviction must be reversed." *State v. Parsons,* 270 *N.J.Super.* 213, 224–25, 636 *A.*2d 1077 (App.Div.1994) (citations omitted). "[B]ecause erroneous instructions on material issues are presumed to be reversible error," *State v. Lopez,* 187 *N.J.* 91, 101, 900 *A.*2d 779 (2006) (citations and internal quotation marks omitted), our care in reviewing jury instructions is deep-seated and meticulous: " 'This judicial obligation, to assure the jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions, is at the core of the guarantee of a fair trial.' " *State v. Grunow,* 102 *N.J.* 133, 149, 506 *A.*2d 708 (1986) (quoting *State v. Simon,* 79 *N.J.* 191, 206, 398 *A.*2d 861 (1979) (citations omitted)). Again, applying these standards, we conclude that the trial court fairly and ade-

quately instructed the jury in response to its question and, therefore, reject defendant's claims.

The jury's question—whether defendant had to know specifically that the vials contained cocaine or whether it was sufficient that defendant knew that the vials contained a controlled dangerous substance—was adequately and fully answered by the trial court. Upon receipt, the trial court read the jury's note to counsel. In response, defendant's counsel noted that "the term ['possess[']] has two elements, one is intentional control and the other is knowledge of the character of the thing you control." According to defendant's counsel, it was the latter, the knowledge element, that formed the basis of the jury's inquiry. When asked by the trial court how defense counsel would prefer to have the jury question answered, he explained that "I would say that [defendant] ... has to know the character of what he picked up, has to have knowledge that what he picked up was cocaine or another CDS I guess. That's what they ask there." [5] When the trial court then explained that the jury would be instructed that defendant had to "knowingly possess *cocaine*"—a more limited charge than the "knowingly possess a controlled dangerous substance" language defendant suggested—and that the trial court would use the model charge concerning the "knowing" state of mind,[6] defendant concurred. More to the point, the trial court's

[5] Counsel for co-defendant Veal took a different tack. In his view, "[t]hat question as I read it ... is a very precise question. .... It's either yes or no. .... You must answer the question not going beyond or recharge of inferences." However, the jury's question applied only to defendant, and not to co-defendant Veal; that distinction is further highlighted by the fact that, although the jury unanimously convicted defendant, it deadlocked on co-defendant Veal. Therefore, co-defendant Veal has no standing to object to the trial court's response to the jury's question.

[6] *Model Jury Charge (Criminal)*, § 2C:2-1 "Possession" (2005) defines "knowingly" in the context of a possession case as follows:

The State must prove beyond a reasonable doubt that a possessor acted knowingly in possessing the item. A person acts knowingly with respect to the nature of his/her conduct or the attendant circumstances if he is aware

answer to the jury's question tracked defense counsel's expressed views.[7] In the end, the trial court's response to the jury's question re-instructed the jury on the term "knowing" within the context of a possession case and limited its application to only cocaine, and not to the more generic "controlled dangerous substances." Nothing in that response requires correction.[8]

## V.

The judgment of the Appellate Division is affirmed.

———————  ·

that his/her conduct is of that nature, or that such circumstances exist, or he/she is aware of the high probability of their existence. A person acts knowingly as to a result of his/her conduct if he is aware that it is practically certain that that conduct will cause such a result. Knowing, with knowledge, or equivalent terms have the same meaning.

Knowledge is a condition of the mind. It cannot be seen. It can only be determined by inferences from conduct, words or acts. Therefore, it is not necessary for the State to produce witnesses to testify that a particular defendant stated, for example, that he acted with knowledge when he had dominion and control over a particular thing. It is within your power to find that proof of knowledge has been furnished beyond a reasonable doubt by inference which may arise from the nature of the acts and the surrounding circumstances.

[7] Indeed, in that context, any result other than enforcement of defendant's trial choices would trigger the application of the invited error doctrine. *See State v. Jenkins, supra,* 178 *N.J.* at 358, 840 *A.*2d 242 (explaining that "a defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial. Thus, when a defendant asks the court to take his proffered approach and the court does so, we have held that relief will not be forthcoming on a claim of error by that defendant." (citations and internal quotation marks omitted)).

[8] That said, although we affirm the more specific jury instruction given in this case as proper, that is, that defendant had to knowingly possess cocaine, nothing herein should be construed to require a departure from the model jury charge for possession of a controlled substance. *See Model Jury Charge (Criminal),* § 2C:35–10 "Unlawful Possession of a Controlled Dangerous Substance" (1988).

Justice ALBIN, dissenting.

A basic precept of our system of justice is that the accused is entitled to be tried solely on the charges contained in the indictment, and not be convicted merely because of his prior bad acts. We know that other-crime evidence has the significant potential to inflame a jury. For that reason, trial courts must act as gatekeepers and take great care before admitting evidence of a defendant's prior crimes or bad acts. In this case, the trial court admitted other-crime evidence without conducting a *N.J.R.E.* 104 hearing [1] or making any findings concerning the evidence's relevance or whether its probative value was outweighed by its prejudicial value. Without an adequate record or findings by the trial court, we cannot know whether the other-crime evidence met the rigorous standards demanded by our case law. Because the jury may have convicted defendant of knowingly possessing cocaine for no reason other than the damning admission extracted from him on the stand—that he previously had possessed cocaine—and because the trial court did not follow the procedural safeguards set forth in our case law, I respectfully dissent.

We have long recognized that other-crime evidence, even when probative of an issue in dispute, has the strong potential to cause irreparable prejudice to a defendant because of its natural "tendency to demonstrate a criminal predisposition." *State v. G.S.*, 145 *N.J.* 460, 468, 678 *A.2d* 1092 (1996). Other-crime evidence has the capacity to "blind the jury from a careful consideration of the elements of the charged offense" and so tarnish a defendant that he may be convicted on the basis of what he once was rather than what he has recently done. *State v. Blakney*, 189 *N.J.* 88, 93, 912 *A.2d* 140 (2006). To avoid the misuse of other-crime evidence, we have required our trial courts to adhere to strict standards before admitting such evidence and, typically, to conduct a *N.J.R.E.* 104

---

[1] *N.J.R.E.* 104 directs trial courts to make preliminary determinations regarding the admissibility of evidence. In a case involving other-crime evidence, such a determination should be made after a hearing out of the presence of the jury. *See State v. Hernandez*, 170 *N.J.* 106, 127, 784 *A.2d* 1225 (2001).

hearing out of the presence of the jury. *State v. Hernandez,* 170 *N.J.* 106, 127, 784 *A.*2d 1225 (2001).

At that hearing, the trial court is required to determine by clear and convincing evidence that the other crime is relevant to a material issue and that its probative value is not outweighed by its prejudicial effect. *State v. Cofield,* 127 *N.J.* 328, 338, 605 *A.*2d 230 (1992) (providing factors for admissibility of other-crime evidence); *see also State v. Williams,* 190 *N.J.* 114, 122, 919 *A.*2d 90 (2007) (citations omitted). Critical to the court's determination is the "specific content of the other-crime testimony," which must be fully developed at the *N.J.R.E.* 104 hearing to allow an appropriate assessment of the evidence's relevance and to balance its probative value against the prejudice to the defendant. *Hernandez, supra,* 170 *N.J.* at 127, 133, 784 *A.*2d 1225 (ordering new trial and remand for *N.J.R.E.* 104 hearing "on all aspects of the precise other-crime testimony"); *see also State v. Bakka,* 176 *N.J.* 533, 547, 826 *A.*2d 604 (2003) (holding that before introducing "evidence of a defendant's [license] revocation along with the reasons for that revocation" in vehicular homicide case, "trial court should hold an evidentiary hearing and apply" *Cofield* factors); *State v. Stevens,* 222 *N.J.Super.* 602, 614, 537 *A.*2d 774 (App.Div.1988) (noting that court must conduct hearing outside presence of jury when other-crime evidence is in dispute), *aff'd,* 115 *N.J.* 289, 302–03, 558 *A.*2d 833 (1989); *State v. Moorman,* 286 *N.J.Super.* 648, 662, 670 *A.*2d 81 (App.Div.1996) (noting that trial court properly conducted *N.J.R.E.* 104 hearing to determine whether prior bad act evidence should be admitted).

Without a *N.J.R.E.* 104 hearing, an evidentiary decision on the admissibility of other-crime evidence may be so fatally flawed and the resulting prejudice so grievous that the reversal of a conviction will be mandated. *See State v. Beckler,* 366 *N.J.Super.* 16, 29, 840 *A.*2d 271 (App.Div.) (reversing conviction because, in part, disputed prior bad act evidence admitted without *N.J.R.E.* 104 hearing), *certif. denied,* 180 *N.J.* 151, 849 *A.*2d 184 (2004); *see also State v. Collier,* 316 *N.J.Super.* 181, 196, 719 *A.*2d 1276 (App.Div.

1998) (holding that on retrial following reversal of conviction, court must hold *N.J.R.E.* 104 hearing if parties dispute extent to which other-crime evidence admissible), *aff'd o.b.,* 162 *N.J.* 27, 738 *A.*2d 369 (1999).

The need for a hearing in this case was not a procedural nicety, but a precondition to a fair trial. The facts perfectly illustrate that point. Defendant was charged with third-degree possession of a controlled dangerous substance, cocaine. At trial, a Jersey City police officer testified that he observed defendant and Daniel Veal engage in a conversation and then exchange currency. Afterwards, Veal placed an object beside a tree, and then defendant appeared to pick up the object and put it in his pocket. The police arrested defendant and confiscated from him four vials of what was later determined to be cocaine.

Defendant testified that he was walking near his home when he came across the four vials lying on the ground. He explained that all too often drug remnants and paraphernalia, such as vials, syringes, and empty marijuana bags, littered the street. On this occasion, he suspected that the vials "could have been drugs or dangerous substances, rat poison, anything." Fearing that curious school children might find the suspected drugs, he lifted the vials from the ground, intending to throw them down a sewer. Before he could dispose of the objects, he was placed under arrest.

To impeach defendant's credibility, the prosecutor at first requested permission to confront defendant with his 1990 conviction for possession of cocaine. The trial court determined that the conviction was too remote in time and therefore barred its introduction for impeachment purposes. *See N.J.R.E.* 609; *State v. Sands,* 76 *N.J.* 127, 144–47, 386 *A.*2d 378 (1978). Interestingly, even if the court had found the conviction to be admissible, the nature of the crime—a previous drug conviction—would have been sanitized and kept from the jury to ensure that the impeachment evidence was not used improperly to show criminal propensity. *See State v. Brunson,* 132 *N.J.* 377, 391–92, 625 *A.*2d 1085 (1993).

Although barred from introducing the conviction as impeachment evidence pursuant to *N.J.R.E.* 609, the prosecutor later argued that the criminal conviction was admissible as other-crime evidence pursuant to *N.J.R.E.* 404(b) to prove that defendant *knew* that the vials contained cocaine. Under *N.J.R.E.* 404(b), other-crime evidence is inadmissible to prove criminal disposition or that defendant is a bad person. Such evidence, however, is admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." *Ibid.*

The prosecutor claimed that defendant's knowledge of the contents of the vials was in dispute and that defendant's prior encounter with cocaine would show that he *knew* precisely the character of those vials. Defendant objected. The court refused to allow admission of the prior cocaine conviction unless the prosecutor could demonstrate "that the actual drugs involved in 1990 were similarly packaged and that [defendant] pled guilty to a charge of having them." The court repeated that point for emphasis, stating that reference to the conviction was "inappropriate" in the absence of a showing that the "substance" possessed by defendant in the 1990 case "looked similar[ ] to the substance that we have today."

The trial court, it appears, decided that unless defendant's earlier encounter with cocaine involved similar packaging—similar type, shape, size, or color vials—defendant would not have been in a position to recognize or know to any degree of certainty the exact character of the vials, which defendant believed may have contained "drugs or dangerous substances, rat poison, anything." That was the basis for excluding the cocaine conviction.

Inexplicably, the trial court failed to follow the simple logic of its holding, allowing the jury to hear that defendant previously held a vial of cocaine without ever determining whether the vials in this case were "similarly packaged" or "looked similar[ ] to the substance that we have today." Fairness would dictate that if the vials held by defendant, ten years apart, differed entirely in size,

shape, and color, then knowledge of the vials' contents in the present case should not be imputed to defendant based on the earlier bad act. Therefore, the trial court should have conducted a *N.J.R.E.* 104 hearing and required the prosecutor to prove by clear and convincing evidence the relevant connection between defendant's prior bad act and the present case. In other words, the prosecutor should have established that defendant must have known the character of the vials because of his prior experience with similar vials.

In contravention of our well-established case law, and without a *N.J.R.E.* 104 hearing, the trial court permitted the prosecutor to cross-examine defendant on his decade-old possession of cocaine and to elicit from defendant that "prior to July 26th in the year 2000" he had "held a vial with cocaine in it in [his] hand." The jury never learned whether that vial previously held by defendant looked anything like the vials he scooped off the ground in Jersey City.[2] Without that critical information, there was no way for the court to make an informed decision on relevance or to properly weigh whether the probative value of the evidence was outweighed by its prejudicial effect. In short, the court did not have an appropriate record to make a determination concerning the admissibility of the other-crime evidence. *See Hernandez, supra,* 170 *N.J.* at 127, 784 *A.*2d 1225.

The majority in this case conducted a "plenary review" because the trial court did "not analyze the admissibility of other-crimes evidence under [*Cofield*]." *Ante* at 534, 933 *A.*2d at 1284. However, the trial court's primary error was rendering a decision without an adequate record. Here, the majority used the same inadequate record on which the trial court based its misguided

---

[2] Additionally, the jury never learned when defendant had previously held the vial of cocaine, whether it was on the occasion that resulted in his criminal conviction more than 10 years earlier, or some more recent date. Because there was no evidentiary hearing, this important point was never explored. Presumably, defense counsel saw no profit in eliciting further information on this highly prejudicial subject.

ruling. Therefore, the findings of the majority cannot have any sounder foundation than that undergirding the trial court's flawed decision.

For the most part, this trial involved a credibility contest between a police officer and defendant. I cannot conclude that the evidence of defendant's "guilty" knowledge was overwhelming, particularly in light of the question raised by the jury during its deliberations: does defendant "have to know it is cocaine? Or does he have to know it is a dangerous substance (narcotics)?" Moreover, I find that the testimony compelled from defendant— that he previously held a vial of cocaine—had the capacity to turn the jury against him and thoroughly infect the proceedings with irreparable prejudice.

Based on the inadequate record before us, it is impossible to say that defendant was not convicted merely because of a ten-year old violation of the law that bore little or no relevance to the charges contained in the indictment. For the reasons I have expressed, defendant did not receive a fair trial, and the judgment of the Appellate Division should be reversed. I therefore respectfully dissent.

Justices LONG and WALLACE join in this opinion.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, RIVERA-SOTO, and HOENS—4.

*For reversal*—Justices LONG, ALBIN, and WALLACE—3.