NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0071-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ACELA E. REGALADA, a/k/a
REGALADO ACELA,

 Defendant-Appellant.
_____________________________________

 Submitted May 16, 2017 – Decided September 26, 2017

 Before Judges Espinosa and Suter.

 On appeal from the Superior Court of New
 Jersey, Law Division, Union County, Indictment
 No. 11-07-0776.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Stefan Van Jura, Deputy Public
 Defender, on the brief).

 Grace H. Park, Acting Union County Prosecutor,
 attorney for respondent (Milton S. Leibowitz,
 Special Deputy Attorney General/Acting
 Assistant Prosecutor, on the brief).

 The opinion of the court was delivered by

SUTER, J.A.D.
 Following a jury trial, Acela Regalada was convicted of third-

degree promoting prostitution, N.J.S.A. 2C:34-1(b)(2). She

appeals the conviction, contending the trial court abused its

discretion by denying her motion to bar the admission of hearsay

statements made by co-conspirators. We affirm the conviction

because there was independent evidence of a conspiracy to promote

prostitution, allowing admission of the statements under N.J.R.E.

803(b)(5).

 Defendant's conviction stemmed from an undercover

investigation. On March 30, 2011, Detective Luis Garcia went to

a massage parlor located on Rahway Avenue in Elizabeth and was

greeted by defendant. Two other women also were present. After

brief conversation, defendant told the other two women "to go to

the back and clean the rooms." She explained the price for a

massage and told Garcia "that the girls accept tips for additional

service." She asked Garcia for an "I.D." number and "became very

nervous" when he did not have one. She "took out . . . some index

cards with different colors" from a drawer. Garcia paid $60,

which defendant placed in a white envelope. Garcia followed a

woman named N.R. to a back room where she gave him a massage.

N.R. asked Garcia "if [he] wanted anything else." She told him

that she would "perform sexual intercourse for $200, oral sex for

$140, and a handjob for one-twenty." He declined.

 2 A-0071-15T2
 Defendant left the building while Garcia was still on

location. She was arrested. A white envelope in her possession

contained cash. The officers also arrested N.R. and the other

woman. A search of the premises yielded index cards, each with a

man's name and information such as a four-digit code, phone

numbers, and dates; condoms from N.R.'s purse; two certifications

in defendant's name showing completion of massage courses; and a

work schedule that listed days of the week and female names.

Information obtained by the police from PSE&G showed that the

utilities for the massage parlor were in defendant's name.

 On April 21, 2011, Officer Eric Ciano went to the same

location with $200 as part of the investigation. He was met by

N.R. who introduced herself. Defendant was not present. He was

taken to a room where N.R. told him the massage was $80, which

would "go[] to the house and that the minimum tip would be $120."

She seemed uncomfortable with his youthful age, and another woman,

L.P., came in and accepted the eighty dollars before starting the

massage. L.P. asked him "what [he] would like to do after the

massage?" She explained she "would perform oral sex topless for

$160 . . . or she would perform a handjob topless for $120." He

declined.

 N.R. and L.P. were arrested. A search of the premises yielded

"index cards very similar to the [prior] ones," with men's names

 3 A-0071-15T2
on them, condoms and an envelope with cash, which included the

money the officer paid, a cable company transfer work order signed

by defendant, lotions, towels, and cleaning agents.1 There were

no manicure or pedicure stations at the locations. None of the

items seized were consistent with other spa services.

 Defendant's pre-trial application to suppress statements made

to the officers by N.R. and L.P. was denied. The trial court was

"satisfied that there is independent proof or evidence suggesting

a conspiracy" based on a statement made by defendant to permit the

admission of statements by N.R. and L.P. under N.J.R.E. 803(b)(5).

 Following defendant's conviction by a jury of third-degree

promoting prostitution, N.J.S.A. 2C:34-1(b)(2), she was sentenced

to three years probation.

 On appeal, defendant raises the following issue:

 THE COURT ABUSED ITS DISCRETION WHEN IT
 ADMITTED HEARSAY FROM TWO ALLEGED CO-
 CONSPIRATORS WITHOUT SUFFICIENT INDEPENDENT
 CORROBORATION OF THE CONSPIRACY. THE
 RESULTANT DENIAL OF DUE PROCESS AND A FAIR
 TRIAL REQUIRES REVERSAL OF THE CONVICTION.
 U.S. Const. amends. VI, XIV; N.J. Const. art.
 I, § 1, ¶ 10.

 A trial court's evidentiary determinations are reviewed under

an abuse-of-discretion standard. State v. Harris, 209 N.J. 431,

1
 Some of the evidence seized on April 21, 2011, was inadvertently
destroyed before trial including the index cards, condoms, and
work order.

 4 A-0071-15T2
439 (2012). A trial court's ruling will not be disturbed "unless

it can be shown that the trial court palpably abused its

discretion, that is, that its finding was so wide [of] the mark

that a manifest denial of justice resulted." State v. Lykes, 192

N.J. 519, 534 (2007) (alteration in original) (quoting Verdicchio

v. Ricca, 179 N.J. 1, 34 (2004)).

 "A statement, made other than by a witness while testifying,

offered to prove the truth of the content of the statement is

hearsay evidence and is inadmissible unless it falls within one

of the hearsay exceptions . . . ." State v. Phelps, 96 N.J. 500,

508 (1984). N.J.R.E. 803(b)(5) provides an exception to the

hearsay rule, permitting a statement made by a co-conspirator to

be admissible against all members of the conspiracy where "the

statement was made while the party and the declarant were

participating in a plan to commit a crime or civil wrong and the

statement was made in furtherance of that plan . . . ." To

qualify, the State must establish "(1) the statement was made in

furtherance of the conspiracy; (2) the statement was made during

the course of the conspiracy; and (3) there is evidence,

independent of the hearsay, of the existence of the conspiracy and

[the] defendant's relationship to it." State v. Cagno, 211 N.J.

488, 530 (2012) (citing State v. Taccetta, 301 N.J. Super. 227,

251 (App. Div.), certif. denied, 152 N.J. 188 (1997)). "[T]he

 5 A-0071-15T2
independent evidence must be substantial enough to engender a

strong belief in the existence of the conspiracy and of defendant's

participation." Phelps, supra, at 511. The independent proof may

take "many forms" including evidence that is "direct or

circumstantial." Ibid.

 All three portions of the rule were satisfied here. Defendant

was charged with promoting prostitution by "[o]wning, controlling,

managing, supervising or otherwise keeping, . . . a house of

prostitution . . . ." N.J.S.A. 2C:34-1(a)(4)(a). The statements

made by N.R. and L.P. were "[offers] to engage in sexual activity

in exchange for something of economic value," which met the

definition of prostitution. N.J.S.A. 2C:34-1(a)(1). These

statements were made as part of a plan to conduct prostitution at

that massage parlor location, and they were made while the

operation was in progress.

 Defendant's statement that the women would provide other

service was independent proof she was aware of, and promoting, the

prostitution operation. This was corroborated by other evidence.

There was no equipment to provide other types of services such as

manicures or pedicures. The other women took direction from

defendant when she told them to clean the rooms. The electric

service for the premises was in defendant's name. She signed a

cable repair order. Her massage school certificates were

 6 A-0071-15T2
displayed. Index cards were found that included only male names

and the "employees" were all female. There were condoms. All of

this independently corroborated the prostitution operation, which

permitted introduction of the hearsay statements by defendant's

co-conspirators under N.J.R.E. 803(b)(5).

 Affirmed.

 7 A-0071-15T2