912 A.2d 140

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. BREANE STARR BLAKNEY, DEFENDANT–
APPELLANT.

Argued November 14, 2006—Decided December 20, 2006.

*Alyssa A. Aiello,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Robyn B. Mitchell,* Deputy Attorney General, argued the cause for respondent (*Stuart J. Rabner,* Attorney General of New Jersey, attorney).

Justice ALBIN delivered the opinion of the Court.

In this appeal from a murder conviction, defendant claims that the trial court's defective limiting instructions on other-crimes evidence when combined with inappropriate, emotionally-charged remarks by the assistant prosecutor in summation denied her a

fair trial. We agree and therefore remand for a new trial on the charge of murder.

## I.

This appeal, which comes to us as of right based on the dissent in the Appellate Division, *see* R. 2:2–1(a)(2), involves the tragic death of a six-month old child, S.B., at the hands of his nineteen-year old mother, defendant Breane Starr Blakney. At a jury trial, the State presented evidence that, during his short life, S.B. suffered from multiple acts of abuse that resulted in burn marks and scars on his chest and right arm, fractures of his ribs and left leg, a lesion on the back of his right ear, and abrasions and a superficial laceration on his left foot. Those non-life-threatening yet horrific injuries well preceded S.B.'s admission to Jersey City Medical Center on September 14, 1999 for symptoms related to shaken-baby syndrome. S.B. died four days later from a fatal brain injury inflicted by the violent shaking of his body sometime shortly before his arrival at the hospital.

The jury convicted defendant of murder in violation of *N.J.S.A.* 2C:11–3; second-degree aggravated assault in violation of *N.J.S.A.* 2C:12–1(b)(1); fourth-degree child abuse in violation of *N.J.S.A.* 9:6–1 and 9:6–3; and second-degree endangering the welfare of a child in violation of *N.J.S.A.* 2C:24–4(a). The trial court sentenced defendant to a thirty-year term of imprisonment without parole eligibility for murder, a concurrent ten-year term with an eighty-five percent period of parole ineligibility for aggravated assault, a concurrent ten-year term for endangering the welfare of a child, and a concurrent five-year term for child abuse.[1] The endangering conviction was merged with the aggravated assault conviction.

---

[1] Although the sentencing transcript reflects that the trial court ordered a five-year term for child abuse, the judgment of conviction erroneously reported the sentence as a three-year term. Defendant does not contest that the sentence for child abuse is, in fact, five years.

The Appellate Division affirmed defendant's convictions as well as the sentences for murder and aggravated assault, but remanded for resentencing because the endangering conviction should have merged with the child abuse conviction instead of the aggravated assault conviction. *State v. Blakney*, 389 *N.J.Super.* 302 at 345–46, 913 *A.*2d 89 at 117–18 (App.Div.2006). The sole issue before us arises from the dissent of Judge Weissbard who would have reversed defendant's murder conviction. *R.* 2:2–1(a)(2). In Judge Weissbard's view, the trial court's inadequate limiting instructions on other-crimes evidence, when combined with the prosecutor's inappropriate and inflammatory remarks in summation, had the clear capacity to undermine confidence in the integrity of the murder conviction and therefore cause an unjust result. *Blakney, supra*, 389 *N.J.Super.* at 352, 913 *A.*2d at 121 (Weissbard, J., dissenting). We agree with Judge Weissbard, substantially for the reasons expressed in his dissenting opinion. *Id.* at 346–47, 913 *A.*2d at 118 (Weissbard, J., dissenting).

We therefore reverse defendant's murder conviction and remand for a new trial on that charge. We offer these comments to underscore the importance of well-crafted limiting instructions when the State introduces other-crimes evidence pursuant to *N.J.R.E.* 404(b) and to remind prosecutors of their obligation to keep their summation remarks within acceptable bounds of advocacy.

## II.

When dealing with other-crimes evidence, a court must precisely instruct the jury that the proper use of such evidence is to prove a relevant issue in dispute and not to impugn the character of the defendant. *See State v. Stevens*, 115 *N.J.* 289, 302–04, 558 *A.*2d 833 (1989). *N.J.R.E.* 404(b) specifically provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

In this case, the State presented other-crimes evidence—the prior injuries suffered by S.B.—to prove that defendant intended to kill her son and to refute any argument that S.B.'s death was caused by mistake or accident.

However probative other-crimes evidence may be to an issue in dispute, such evidence creates the strong potential for prejudice because of its natural "tendency to demonstrate a criminal predisposition." *State v. G.S.*, 145 *N.J.* 460, 468, 678 *A.*2d 1092 (1996). It is the danger that other-crimes evidence may indelibly brand the defendant as a bad person and blind the jury from a careful consideration of the elements of the charged offense that requires the trial court to deliver the limiting instructions in a way that the jury can readily understand. *Id.* at 469, 678 *A.*2d 1092 ("[T]his Court has required that when a trial court admits [other-crimes] evidence, the court must specifically instruct the jury about the evidence's limited relevance."); *Stevens, supra,* 115 *N.J.* at 309, 558 *A.*2d 833 ("[T]he inherently prejudicial nature of such evidence casts doubt on a jury's ability to follow even the most precise limiting instruction. Recognizing this dilemma, trial courts should take pains to instruct juries carefully and comprehensively, with ample reference to the specific evidence and issues in a case ...." (citation omitted)). We note that the better practice is to give limiting instructions not only at the time that other-crimes evidence is presented, but also in the final jury charge. *State v. Angoy*, 329 *N.J.Super.* 79, 89–90, 746 *A.*2d 1046 (App.Div.2000) (stating that "in addition to its inclusion in the final jury charge," limiting instructions preferably should be given contemporaneous with admission of other-crimes evidence, "unless there is some compelling reason to do otherwise").

On the whole, the other-crimes limiting instructions in this case failed the test required by our jurisprudence. The trial court did not give contemporaneous limiting instructions when other-

crimes evidence was placed before the jury. The limiting instructions in the final jury charge, moreover, inadvertently were not presented in one uninterrupted reading, but rather were fragmented, with one part of the instructions separated from another part by seven pages of jury charge on an unrelated subject. *Blakney, supra,* 389 *N.J.Super.* at 348–49, 913 *A.*2d at 119 (Weissbard, J., dissenting). Further, the trial court advised the jury that if it found that defendant caused the prior injuries to her son, it could not then "presume" that "that automatically means she must have committed the crime on September 14." As Judge Weissbard pointed out:

> [T]he limiting instruction should have said that if defendant committed the earlier acts, that evidence *may not* be considered on the homicide charge to show that defendant had a disposition to commit murder, not that it could not be "automatically" considered for that purpose. Reasonably understood, the use of "automatically" implied that the evidence could be considered, although not "automatically."
>
> [*Id.* at 350, 913 *A.*2d at 120 (Weissbard, J., dissenting).]

Those defects, along with others detailed by Judge Weissbard, rendered the limiting instructions less than effective and susceptible to misleading the jury in a closely-poised case in which the jury could easily have concluded that defendant was guilty of aggravated manslaughter as opposed to murder. *Id.* at 348–52, 913 *A.*2d at 119–21 (Weissbard, J., dissenting).

There were no witnesses or direct evidence to shed light on the precise circumstances that led defendant to inflict the fatal injury on her son or on her state of mind at that time. The defense posited that others who cared for S.B. may have caused that injury and that, in any event, S.B.'s death was likely caused by an act of recklessness. A statement that defendant gave to the police, however, suggested that she might have taken out her frustration and anger with her father, boyfriend, and work situation on S.B. Even if defendant acted out of frustration and anger in causing the death of her son, that still would not have answered whether she purposely or recklessly killed him. Whether defendant purposely or knowingly caused serious bodily injury resulting in death (murder) or recklessly caused death under circumstances

manifesting extreme indifference to human life (aggravated manslaughter) depended in large part on circumstantial evidence. That evidence mostly consisted of the injuries that S.B. had suffered earlier during his young life—the other-crimes evidence that the State offered to prove defendant's intent and absence of mistake and accident in committing the offense. For that reason, proper instructions on other-crimes evidence were essential to a fair determination of the murder charge in the cool light of reason.

## III.

Additionally, the assistant prosecutor's highly emotional and personalized remarks in summation crossed the bounds of propriety and compounded the prejudice flowing from the inadequate other-crimes limiting instructions. We will provide two of ·the assistant prosecutor's remarks that are particularly troubling to us.

The assistant prosecutor expressed his moral outrage at the injuries inflicted on S.B., injecting into the case his own personal views rather than solely presenting the objective evidence by which to judge defendant's culpability. The assistant prosecutor stated:

> You don't have the luxury of looking at these photographs and feeling the sorrow and anger and rage that I feel when I look at them, and if during the course of this trial I let those feelings out because I yelled too loud or because I threw a doll into that seat, forgive me. Every once in awhile I can't remain distant anymore. It just gets the better of you. So I'm sorry if I offended you.

He concluded:

> I'm done. I could probably go on for, go on to lunch, maybe longer, but I can't look at these photos anymore. I just can't.

The assistant prosecutor's personal feelings of outrage and revulsion were not relevant to the consideration of any issue in the case and were unnecessarily inflammatory. The assistant prosecutor also wrongly suggested that defendant should be condemned solely on the basis of her status as a mother who inflicted terrible injuries on her young son. He declaimed:

> Why the hell would you do that to a child? Why?

Because you're frustrated? Because you don't want to be a mother anymore? I mean, what is most repulsive about this case is that we are confronted with the notion that a mother can do this to her child. We are repulsed by that. Motherhood, a more noble avocation you can't find.

Those remarks in no way advanced a fair determination of the most serious charge before the jury—whether defendant purposely or knowingly (as opposed to recklessly) caused serious bodily injury resulting in death.[2] We have often noted that "[t]he primary duty of a prosecutor is not to obtain convictions, but to see that justice is done." *State v. Ramseur,* 106 *N.J.* 123, 320, 524 *A.*2d 188 (1987). We recognize that a trial is not a tidy affair and that emotions may run high, particularly in a trial involving the death of a child. *State v. Bucanis,* 26 *N.J.* 45, 56–57, 138 *A.*2d 739, *cert. denied,* 357 *U.S.* 910, 78 *S.Ct.* 1157, 2 *L.Ed.*2d 1160 (1958). That being said, the assistant prosecutor's duty is to prove the State's case based on the evidence and not to play on the passions of the jury or trigger emotional flashpoints, deflecting attention from the hard facts on which the State's case must rise or fall. *State v. Frost,* 158 *N.J.* 76, 82, 727 *A.*2d 1 (1999) (recognizing that prosecutors are granted significant leeway to make forceful arguments in summation "as long as their comments are reasonably related to the scope of the evidence"); *State v. Marshall,* 123 *N.J.* 1, 161, 586 *A.*2d 85 (1991) (commenting that although prosecutors may vigorously sum up, they must not make "inflammatory and highly emotional" appeals that "possess[ ] the capacity to anger and arouse the jury and thereby divert them from their solemn responsibility to render a verdict based on the evidence").

### IV.

In determining whether a defendant has been denied a fair trial, we necessarily look to the significance of the trial errors

---

[2] The assistant prosecutor's remarks were raised as plain error for the first time on direct appeal. Pursuant to *Rule* 2:10–2, an "appellate court may, in the interest of justice, notice plain error not brought to the attention of the trial or appellate court."

in light of the evidence presented to the jury. Substantial trial errors are more likely to tip the scales and affect the outcome in a close case, such as this one. *See State v. Simon,* 79 *N.J.* 191, 207, 398 *A.*2d 861 (1979) ("[I]f the error does not deflect the jury from a fair consideration of the competent evidence of record and from reaching a verdict of guilt which is supported overwhelmingly by properly admitted evidence, the conviction should not be impugned."); *State v. La Porte,* 62 *N.J.* 312, 318, 301 *A.*2d 146 (1973) (concluding that because "evidence of defendant's guilt was so strong" alleged error was "inconsequential"). Standing alone, the defective limiting instructions or the assistant prosecutor's inappropriate remarks might not have been sufficient to undermine our confidence in the jury's verdict on the murder charge. However, the inadequate jury instructions combined with the prosecutorial excesses in summation, when cast against the less than overwhelming evidence supporting a murder conviction, cannot be viewed as harmless. *See State v. Reddish,* 181 *N.J.* 553, 616, 859 *A.*2d 1173 (2004) (recognizing that isolated error that might otherwise be harmless, "in combination [with other errors] can cast sufficient doubt upon the verdict to warrant reversal"); *Feldman v. Lederle Labs.,* 132 *N.J.* 339, 352, 625 *A.*2d 1066 (1993) (finding that although each error independently did not necessarily require reversal, "[w]hen considered in combination, those errors had the cumulative effect" of mandating retrial). Because we conclude that the aggregate errors had the clear capacity to cause an unjust result, we are constrained to reverse the murder conviction and remand for a new trial.

*For reversal and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.