**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0254-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ASHA A. PATTERSON,

    Defendant-Appellant.

_____

Argued May 25, 2021 – Decided June 14, 2021

Before Judges Fisher, Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 15-12-1080.

Arianna Markel argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Perone, First Assistant Deputy Public Defender, of counsel; Richard C. Tarlowe, Arianna Markel, and Giorgio Traini, Designated Counsel, on the briefs).

Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Acting Morris County Prosecutor, attorney; Tiffany M. Russo, on the brief).

PER CURIAM

Defendant was convicted by a jury, after a four-day trial, of second-degree eluding, N.J.S.A. 2C:29-2(b), resulting from her leading police on a chase on Interstate 80 at highly excessive speeds. Defendant contends numerous errors were committed during the trial and in the imposition of a five-year prison term. After close examination of the record, we conclude that any errors were not reversible.

The jury heard evidence that, on July 12, 2015, around 2:00 a.m., two state troopers on routine patrol in the Parsippany-Troy Hills area observed a black Dodge sedan swerving on Interstate 80. The troopers activated their lights and siren; the Dodge slowed, continued swerving between the shoulder and the roadway, and then "pulled back out into the main line of the highway" and sped away at "extreme speeds" as fast as 115 miles per hour. A "lengthy pursuit" ensued during which the troopers observed "small objects" – never recovered – "about the size of a paper bag" thrown out of the passenger side window. The pursuit ended when the Dodge abruptly came to a halt outside an auto body shop in Roxbury. Trooper Adam Gonzalez testified that he approached the vehicle with his weapon drawn, observed there was also a passenger in the car, and "gave numerous commands" to the driver to "get out on the ground." He testified to "yelling" orders at the defendant, and

A-0254-18

defendant making statements in response, all of which was confirmed by the mobile video recording (MVR) playback.

Defendant slowly crawled from the vehicle on all fours; Trooper Gonzalez "escorted" her in the direction of the back of the car by "dragg[ing] her around" by her sweatshirt before handcuffing her and placing her in the rear of the troop car. He did not ask defendant any questions, and defendant did not then provide any statements. Meanwhile Trooper Justin Storie was on the other side of the car dealing with the passenger – Javaun Jackson – who was resisting arrest. It was later learned that Jackson was subject to an outstanding arrest warrant in Virginia and was on probation for a forgery conviction in New Jersey. During these events, the troopers observed a silver grinder inside the passenger side door and rolling papers and loose, raw marijuana on the car's center console. Trooper Gonzalez testified that he and Trooper Storie did not search inside the car nor inside the compartment of the center console. Trooper Storie concurred that the marijuana was located on the console near the gear shift and added there was a pervasive smell of raw marijuana inside the Dodge.

Backup arrived roughly one minute after defendant was detained. Trooper Gonzalez testified that one of the arriving troopers read defendant her Miranda[1]

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0254-18

rights, and he knew this because he "specifically remember[ed] . . . asking [the other trooper] if he had a <u>Miranda</u> card and if he read [defendant] her rights and [the trooper] stated yes." Trooper Gonzalez also testified that although he was speaking to another trooper while defendant was being Mirandized, he could still see and hear it happening. Soon after defendant was Mirandized, Trooper Gonzalez spoke with her; specifically, he asked defendant, "What's the deal?" She responded, "I didn't (indiscernible) you guys before." After her reply, Trooper Gonzalez told defendant:

> You didn't see us? You were going 115 miles an hour.
> You didn't see us? You're . . . driving in out of lanes.
> You didn't see us? Don't fucking lie to me. . . . What's
> the deal? Why are you running? . . . What did he – what
> are you ditching out the window?

After being brought to the police station, Trooper Gonzalez read defendant her rights, which she acknowledged by signing a <u>Miranda</u> card. Trooper Gonzalez testified that defendant gave no indication that she wished to speak to an attorney.

At the station, troopers observed that defendant had a bruised eye; when asked how it happened, she said Jackson struck her while she was driving after she told him she was pregnant. She also told troopers that she and Jackson saw the police lights behind her vehicle, but Jackson "told her not to stop several times because he had warrants, and he didn't want to be arrested." Trooper Gonzalez attempted to

4

contact the domestic violence response team, and he presented defendant with a victim notification form, which she signed. Jackson was charged with assault.

Defendant was indicted and charged with second-degree eluding, N.J.S.A. 2C:29-2(b), and fourth-degree obstruction, N.J.S.A. 2C:29-1. Prior to trial, the judge conducted a hearing to determine the admissibility of statements defendant made following her arrest. After hearing testimony from Trooper Gonzalez and reviewing the MVR – defendant did not testify – the judge granted the State's motion to admit defendant's statements. The judge found credible Trooper Gonzalez's testimony that he "heard and observed" defendant being read her Miranda rights by another trooper at the scene, that defendant exhibited a calm demeanor at the station despite "chang[ing] her story multiple times," and that defendant did not seem under the influence at the time of her arrest. Finding the testimony to be "credible" and "uncontroverted," particularly when considered alongside the MVR, the trial judge determined that "defendant knowingly, voluntarily, and intelligently" waived her Miranda rights and any subsequent statements would be admissible at trial.

In another pretrial motion, the State sought an order allowing it to introduce at trial, as N.J.R.E. 404(b) evidence, the marijuana and drug paraphernalia recovered from the car. In granting the motion, the judge agreed with the State that the evidence was "particularly relevant" for "combat[ting]" defendant's duress

5

argument; the judge observed that the contraband was within defendant's reach and view at the time of arrest and its presence could, thus, be interpreted by a jury as motivation for eluding police.

At the conclusion of a four-day trial, the jury convicted defendant of eluding and acquitted her of obstruction. She was later sentenced to a five-year prison term.

Defendant appeals, arguing:

> I. THE STATE FAILED TO ESTABLISH A VALID MIRANDA WAIVER AND THE TRIAL COURT THEREFORE ERRED IN ADMITTING [DEFENDANT'S] STATEMENTS AT THE SCENE.
>
> II. THE COURT ERRED IN ADMITTING AND FAILING TO PROVIDE SUFFICIENT LIMITING INSTRUCTIONS CONCERNING HIGHLY PREJUDICIAL EVIDENCE OF OTHER CRIMES.
>
>> A. The Trial Court Erred in Admitting Other-Crimes Evidence.
>>
>> B. The Trial Court Failed to Provide the Requisite Limiting Instructions at Trial and During the Jury Charge.
>
> III. THE TRIAL COURT IMPROPERLY RESTRICTED [DEFENDANT'S] CROSS EXAMINATION OF THE STATE'S WITNESSES.
>
>> A. The Name That Jackson Provided Upon His Arrest Is Admissible Non-Hearsay.

6

B. [Defendant's] Statements to Trooper Gonzalez Regarding Jackson Are Admissible Non-Hearsay.

C. Cross-Examination of Trooper Gonzalez Regarding [Defendant's] Eye Injury Was Proper.

D. The Court's Errors Were an Abuse of Discretion And Result in a Manifest Injustice to [Defendant].

E. The Court's Errors Violated [Defendant's] Sixth Amendment Confrontation Rights.

IV. PROSECUTORIAL MISCONDUCT DENIED [DEFENDANT] A FAIR TRIAL.

A. The Prosecutor Erred by Commenting Repeatedly on [Defendant's] Decision Not to Testify.

B. The Prosecutor Erred by Shifting the State's Burden of Proof to [Defendant].

C. The Prosecutor Erred by Misstating the Law, and Telling the Jurors that They were Obligated to Find Duress and to Find Defendant Guilty.

V. THE COURT ERRONEOUSLY CHARGED THE JURY AS TO DURESS.

VI. THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF

7

THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL.

VII. THE TRIAL COURT IMPROPERLY CONSIDERED AN ARREST AND PENDING CHARGES IN FINDING AGGRAVATING FACTOR SIX.

We reject these arguments and affirm.

I

Defendant first argues that statements she made at the scene of arrest should have been suppressed "because the State plainly failed to establish, beyond a reasonable doubt, a valid waiver of Miranda rights." She alludes to the fact that the trooper who allegedly Mirandized her was never called to testify, and Trooper Gonzalez's claim that he witnessed the Mirandizing was insufficient.

The State bears a "heavy" burden to demonstrate beyond a reasonable doubt that an accused has waived the right against self-incrimination. State v. Nyhammer, 197 N.J. 383, 388 (2009); State v. Hartley, 103 N.J. 252, 260 (1986). Our Supreme Court has emphasized the importance of a showing that an incriminating statement is not made "in an atmosphere of coercion," which may invalidate a statement even if otherwise appearing to be knowing, intelligent, and voluntary. State v. Reed, 133 N.J. 237, 256 (1993); see also State v. A.M., 237 N.J. 384, 397 (2019). To determine whether a statement was voluntary, a judge must examine the totality of the

circumstances, "including both the characteristics of the defendant and the nature of the interrogation." State v. Galloway, 133 N.J. 631, 654 (1993) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

When reviewing a judge's decision to admit statements, we are required to "engage in a 'searching and critical' review of the record" to ensure a defendant's constitutional rights are protected. State v. L.H., 239 N.J. 22, 47 (2019) (quoting State v. Pickles, 46 N.J. 542, 577 (1966)). But we will generally defer to a judge's factual findings concerning the voluntariness of confessions when "based on sufficient credible evidence in the record." Ibid. Findings of fact that are clearly mistaken are not accorded deference. State v. S.S., 229 N.J. 360, 381 (2017).

Defendant made two sets of statements to officers: one at the scene of her arrest and the other at the police station. There is no merit to the argument that the second set of statements violated her Miranda rights. Trooper Gonzalez testified that he read the rights to her on arrival in an uncoercive environment, that she voluntarily signed a Miranda card acknowledging her understanding of the rights, and that defendant did not invoke her rights to remain silent or to speak with an attorney. The judge credited this testimony, and defendant offered nothing in response.

9

The more pertinent question is whether the first set of statements[2] – those made at the scene – were admissible. First, there is no question that defendant was not Mirandized when Trooper Gonzalez pulled her to the back of her car or during the few minutes that followed until defendant was placed inside the patrol vehicle. According to Trooper Gonzalez, another trooper, who was not called to testify, read defendant her <u>Miranda</u> rights while defendant and the other trooper were inside a patrol vehicle. Certainly, the State took the risk that the trial judge might find Trooper Gonzalez's testimony about what he heard or observed unreliable or insufficient; certainly, it would have been more persuasive for the State to have called the trooper who purportedly advised defendant of her <u>Miranda</u> rights. But the defense also had the option of producing the other trooper and, like the State, chose not to do so. Indeed, defendant also chose not to testify, and thus the judge was presented with only Trooper Gonzalez's testimony, which the judge found credible, in ultimately concluding that defendant was Mirandized in the patrol vehicle and that her subsequent statements were free and voluntary and not rendered coercive or unreasonable by the circumstances surrounding the arrest.

---

[2] Specifically, defendant argues that her statement to Trooper Gonzalez that she did not see the police vehicle should have been suppressed. Considering the conflicting statements later given at the police station, the admission of the statement made at the scene – even if inadmissible – could not have constituted prejudicial error.

A-0254-18

After a "searching and critical" analysis of the totality of the circumstances and evidence presented, as required by L.H., the trial judge determined that the State proved beyond a reasonable doubt that defendant was advised of her Miranda rights and voluntarily waived them. We discern no "clear mistake" in that determination. See S.S., 229 N.J. at 381.

## II

Defendant claims the trial judge erred by allowing the State to introduce evidence of other crimes or wrongs pursuant to N.J.R.E. 404(b). This evidence was the marijuana and drug paraphernalia seen by the troopers in plain view in the vehicle defendant was driving. Defendant also argues that, if admissible, the judge erred by failing to provide the jury with "sufficient limiting instructions" regarding that evidence. We reject both aspects of this argument.

## A

The trial judge heard argument on these questions without taking any testimony. The State argued that defendant constructively possessed the contraband at the time of her arrest, and that the issue of whether defendant would elude police to avoid punishment for possession of marijuana and drug paraphernalia – posing the question whether one would commit a far more serious offense to avoid being charged with a minor offense – "should be for the jury to decide." In response,

11

defendant argued her "mere presence . . . around where the drugs are" was not sufficient to prove constructive possession when another person was present in the car, and that the introduction of minor marijuana possession would "confuse the jury" and "lead to an unfair bias position."

Evidence of other crimes, wrongs, or acts are "not admissible to prove the disposition of a person" but are admissible to prove, among other things, "motive" and "intent" "when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b); see also State v. Reddish, 181 N.J. 553, 608 (2005). The potential danger of admitting other crimes evidence is that the jury may convict only because it believes the defendant "is a bad person in general." State v. Cofield, 127 N.J. 328, 336 (1992). To ensure the evidence is "material to a non-propensity purpose," State v. Rose, 206 N.J. 141, 159 (2011), a trial judge must apply the four-pronged Cofield test and determine whether: (1) the evidence is relevant to a genuinely disputed material issue; (2) the other conduct is similar to what is charged and occurred reasonably close in time to the issue at trial; (3) the other conduct evidence is clear and convincing, and (4) the probative value of the evidence is not outweighed by prejudice to the defendant, 127 N.J. at 338. The admissibility of other crimes evidence rests in the discretion of the trial judge to which we will defer absent an abuse of discretion. Reddish, 181 N.J. at 609.

The trial judge considered and thoroughly explained the application of the Cofield test to the other crimes evidence the State intended to present at trial. The judge found defendant's possession of drugs and paraphernalia was "relevant to [her] motive for eluding law enforcement" and because defendant would be urging "an affirmative defense of duress to explain her behavior." On appeal, defendant argues the trial judge could not infer that defendant constructively or personally possessed the drugs and other contraband. But the judge relied on the unrebutted testimony of Trooper Gonzalez during the earlier Miranda hearing that contraband was in sight near the center console, not exclusively on the passenger's side, and the trial judge was entitled to find him credible in determining the admissibility of evidence of this other alleged crime.

It is enough, as the judge explained, that the actor be in constructive possession, which is established when "the circumstances permit a reasonable inference that [the defendant] has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." State v. Spivey, 179 N.J. 229, 237 (2004). Because the trooper testified to the marijuana's presence on the center console, well-within the area of defendant's physical control, the judge did not err in finding sufficient evidence of defendant's constructive possession for purposes of admitting this other crime evidence.

13

The second prong was satisfied because the alleged other crime occurred close in time to the charged offense even though its nature was dissimilar. When other crime evidence is offered to prove motive, its similarity is not a requirement of admissibility. State v. Collier, 316 N.J. Super. 181, 194 (App. Div. 1998), aff'd o.b., 162 N.J. 27 (1999); see also State v. Nance, 148 N.J. 376, 389-90 (1997).

In considering the third prong, the judge did not err in determining there was clear and convincing evidence that the person against whom the evidence would be used committed the prior wrongful act; Trooper Gonzalez's uncontradicted credible testimony elicited during the Miranda hearing was sufficient to pass through the clear and convincing threshold. See State v. Hernandez, 170 N.J. 106, 125 (2001).

Lastly, the judge found the fourth prong was satisfied because the risk of undue prejudice did not outweigh the probative value of the evidence. The judge acknowledged that motive has "been treated differently" in N.J.R.E. 404(b) analyses and is generally granted a "wider range" that could only be overcome by "a very strong showing of prejudice" to justify exclusion. State v. Covell, 157 N.J. 554, 565, 570 (2010). See, e.g., State v. Loftin, 146 N.J. 295, 394 (1995) (concluding it was unlikely "that a juror would have been so affected by the sight of defendant engaging in the act of credit card fraud that she or he would have been moved to convict defendant of the violent crime of murder"); State v. DiFrisco, 137 N.J. 434, 497

(1994) (holding, where "defendant confessed to [an] execution-style killing, . . . the fact that defendant stole a car, committed a few traffic violations and yelled at his mother had very little tendency to divert the jurors' attention from their duties"). Notwithstanding, defendant argues that the potential for prejudice extends beyond the inference of a propensity for eluding and would "indelibly brand the defendant as a bad person and blind the jury" from considering the elements of defendant's charges. State v. Blakney, 189 N.J. 88, 93 (2006). We disagree.

In further claiming that the evidence was unduly prejudicial, defendant argues that the prosecutor "exploited" the "improper admission of this evidence" because "the tiny amount of marijuana recovered" would have only supported a disorderly person's charge. While the prosecutor did, in her closing arguments, emphasize the presence of marijuana in the vehicle and ask the jury to consider its presence in deliberations, she did not do so unreasonably. Prosecutors are "afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). Even if a prosecutor "stray[s] over the line of permissible commentary," we will not intervene unless the severity of such misconduct was "so egregious as to deprive the defendant of a fair trial." State v. McNeil-Thomas, 238 N.J. 256, 275 (2019) (citing State v. Wakefield, 190 N.J. 397, 437 (2007)).

15

The comments by the prosecutor in her closing remarks did not "infect[] the trial with unfairness as to make the resulting conviction a denial of due process" and therefore defendant's arguments are without merit. State v. Jackson, 211 N.J. 394, 409 (2012). The prosecutor merely asked the jury to consider the presence of marijuana as a possible motive for defendant's attempts to elude police, among other existing factors such as Jackson's presence in the vehicle while he was on probation. Neither the closing remarks nor the physical evidence, nor the two considered as a whole, created prejudice sufficient to outweigh the probative value the evidence provided.

B

Defendant argues the judge was "too little too late" in providing limiting instructions about the other crimes evidence because those instructions were not given until days after the admission of the evidence. She also argues that, when given, the instructions lacked "ample reference to the specific evidence and issues" in the case, Blakney, 189 N.J. at 93, and that the later jury charge merely referenced the previous instructions. In response, the State argues that defendant did not object to the limiting instructions or the jury charge, and that the belatedness of the judge's delivery of the cautionary instructions was "of no consequence."

16

When evidence is admitted under N.J.R.E. 404(b), a judge must provide the jury with a limiting instruction that is "formulated carefully to explain precisely the permitted and prohibited purposes of the evidence." Cofield, 127 N.J. at 341. We have said that a "prompt delivery of limiting instructions, either before, simultaneously with, or immediately after" admitting N.J.R.E. 404(b) evidence "should be standard procedure" at trial, unless there is a compelling reason to do otherwise. State v. Angoy, 329 N.J. Super. 79, 89-90 (App. Div. 2000). In Blakney, the Court found a limiting instruction inadequate because it was not given contemporaneously with the other crimes evidence and because the final jury charge was fragmented and interrupted. 189 N.J. at 95. Such an error, in a case where the other crimes evidence instruction was "essential to a fair determination," necessitated reversal of that defendant's murder conviction. Ibid. But we have excused gaps between the introduction of evidence and the limiting instructions, particularly when the evidence was not a linchpin of the prosecution's case-in-chief. See Angoy, 329 N.J. Super. at 89 (finding no plain error in a two-week gap between admission of other crimes evidence and the limiting instructions).

Defendant did not object to the lack of cautionary instructions when the evidence was introduced, and she did not object to the instructions once given, or to the handling of this issue in the jury charge. Consequently, defendant must show

plain error. R. 1:7-2; State v. Singleton, 211 N.J. 157, 182 (2012). Although we agree the judge mistakenly failed to provide limiting instructions immediately after introduction of other crimes evidence, the instruction was given the next day of the proceedings.[3] By the time instructions were given, "witnesses were only on the stand for a little over two hours" and the jury only heard "one portion of a day" of testimony. The judge thoroughly explained to the jury that the evidence "should only be considered as it relates to [defendant's] motive" and told the jury that it could "not find defendant guilty . . . simply because the State has offered evidence that she committed other wrongs."

The jury charge was read later that same day, at which point the judge reiterated that the jury "could only use evidence pursuant to a limiting instruction," and that he would read the instruction in its entirety again should the jury ask him to. The charge was not fragmented as in Blakney merely because it coincidentally was read soon after the limiting instructions were first given. Moreover, even if the judge erred in the method used to give the instructions, the error did not demonstrate a "legal impropriety . . . prejudicially affecting the substantial rights of the defendant

---

[3] The evidence was admitted on a Thursday, and the cautionary instructions were given on the following Tuesday, which was the next day of trial.

and sufficiently grievous to justify" reversal of the conviction. State v. Hock, 54 N.J. 526, 538 (1969); see also State v. Nero, 195 N.J. 397, 410-11 (2008).

III

Defendant argues the judge abused his discretion and violated her right to confront witnesses when he "repeatedly refused to permit [defendant] to elicit testimony helpful to the duress defense" and failed to "make an independent assessment of the admissibility of the evidence." In this regard, defendant refers to the exclusion of testimony: about the "false name" Javaun Jackson provided Trooper Gonzalez at the time of his arrest; defendant's statements to Trooper Gonzalez that Jackson told her he had an outstanding warrant; and Trooper Gonzalez's testimony regarding defendant's eye injury. We defer to a trial judge's evidentiary rulings "absent a showing of an abuse of discretion," or where "clear error of judgment" has occurred. State v. Marrero, 148 N.J. 469, 484 (1997).

The right to cross-examine witnesses is constitutionally guaranteed to the accused. See State v. Harvey, 151 N.J. 117, 187-88 (2000). But the scope of cross-examination remains under the control and purview of trial judges, and we will not interfere absent a showing of clear error and prejudice. State v. Murray, 240 N.J. Super. 378, 394 (App. Div. 1990). In light of these principles, we turn to the three rulings that defendant criticizes in this appeal.

Statements regarding Jackson's "False Name." A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. N.J.R.E. 801(c). If a statement meets one of the numerous hearsay objections, a judge may permit its admission. See N.J.R.E. 803, 804, 805. At trial, defense counsel twice attempted to elicit testimony from Trooper Gonzalez that Jackson, at the time of arrest, gave them a false name. The State objected each time, and the judge sustained those objections on the ground that the statement defense counsel was attempting to procure was hearsay, i.e., a statement made by the out-of-court declarant, Jackson. Defense counsel argued at sidebar that because Jackson's statement was memorialized in a business record and the information was foundational to potential motive for Jackson to evade police, it could be answered without eliciting hearsay. In this appeal, defendant reprises that argument.

Based on the nature of the statement defendant was trying to obtain – whether Jackson gave a false name to troopers – and the statement having occurred out of court, the trial judge correctly found it constituted hearsay. The trial judge interpreted defense counsel's statement that "I can just elicit . . . the name that was given to [Gonzalez] was wrong" as being offered to prove Jackson gave a false statement, not just that he made a statement. We agree. Defendant was attempting to elicit this hearsay statement to prove the truth of her argument that Jackson gave

20

a false name. If not for the truth of that fact, the purpose for that testimony eludes us.[4]

We also reject defendant's argument that because that statement was contained in a business record it becomes admissible if the business record is admissible. That a statement is contained in a business record does not transform internal hearsay into admissible hearsay. State v. Lungsford, 167 N.J. Super. 296, 309 (App. Div. 1979); see also Brown v. Mortimer, 100 N.J. Super. 395, 405-06 (App. Div. 1968).

Statements Regarding Jackson's Outstanding Warrant. While cross-examining Trooper Gonzalez, defense counsel asked if defendant had "indicated to [Gonzalez] that she was told to – not to pull over because of Javaun Jackson's warrant." The State's objection was sustained but the judge allowed defense counsel to pursue a slightly adjusted line of questioning, in which counsel was permitted to ask Gonzalez "what he meant" by his own statements to defendant at the time rather than what exactly the words were.

Defendant argues that the judge's hearsay ruling was erroneous; she specifically argues that her statements to Trooper Gonzalez at the time of arrest were already admitted as non-hearsay party-opponent statements by the State's direct

---

[4] If offered to prove a state of mind rather than the truth, then it would seem the testimony sought only related to Jackson's state of mind, which would have no relevance.

examination, and alternatively was relevant to her state of mind and therefore not hearsay. Defendant further argues that the statement was within the scope of cross-examination under N.J.R.E. 611(b) because Trooper Gonzalez testified to defendant's statements during direct examination,[5] to which defendant did not object.

Defendant's party-opponent argument is without merit. The party-opponent statement exception to the hearsay rule applies when the statement is "offered against a party-opponent" and is either that party-opponent's own statement, adopted by word or conduct or manifestly believed by the party-opponent, made by an agent concerning their agency, or made at the time and in furtherance of the party-opponent and declarant were participating in a plan to commit a crime. N.J.R.E. 803(b)(1)-(5). This exception was inapplicable because defense counsel sought

---

[5] The portion of the testimony defendant refers to is as follows:

> Q: Did [defendant] say when [her eye injury] occurred?
>
> . . . .
>
> A: It's while they were driving. She – they were talking, and she had told him that she was pregnant, in which he responded by striking in the face while she was driving. And then after she saw the lights is when we – excuse me. After she saw the lights, he told her not to stop several times because he had warrants, and he didn't want to be arrested for the warrants. So that's why – that's what she told me while at the station.

information about the contents of Jackson's statement – i.e., whether Jackson told defendant not to pull over due to his warrants – not defendant's own statement to Trooper Gonzalez. In short, the statement is an example of "hearsay within hearsay" that "shall not be inadmissible on the ground that it includes a statement made by another declarant which is offered to prove the truth of its contents if the included statement itself meets the requirements" of a hearsay exception. N.J.R.E. 805; see also Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012). Jackson's statement, standing alone, does not meet a hearsay exception and Jackson is not a party to the proceeding. Therefore, the judge properly rejected defendant's contrary argument.

Defendant also argues the statement was admissible under the then-existing mental, emotional, or physical condition exception. See N.J.R.E. 803(c)(3). To be admissible under this exception, the declarant's state of mind must be at issue. State v. McLaughlin, 205 N.J. 185, 206 (2011). The admission of the evidence requires that the statement "reflects a mental or physical condition of the declarant which constitutes a genuine issue" or that the statement "is otherwise relevant to prove or explain the declarant's conduct." State v. Downey, 206 N.J. Super. 382, 390 (App. Div. 1986). Defense counsel argued to the trial judge that he intended to obtain Trooper Gonzalez's testimony about defendant's statements to explain defendant's

motive for not pulling over when she observed the police pursuit, and that it therefore directly related to the duress defense she was pursuing. To that extent, the testimony was arguably a reflection of defendant's mental condition and relevant to explain her conduct. And its exclusion was harmless because the information was elicited during the prosecution's examination of Trooper Gonzalez, see footnote 5, above, and because the judge allowed defense counsel to develop the issue despite the arguably erroneous limitation. In short, that defendant was aware that Jackson had an outstanding warrant, as a basis for his allegedly motivating her to elude the police, was elicited in the testimony that was permitted and a matter that defense counsel would therefore be free to argue to the jury in support of the duress defense.

Testimony Regarding Defendant's Eye Injury. Defense counsel sought to elicit testimony from Trooper Gonzalez on cross-examination whether defendant told him "that the right side of her face was bruised or injured or burning." In response to the State's objection, the judge allowed defense counsel to inquire "solely into the area that was brought out by the State in direct . . . when she was transported back." Because Trooper Gonzalez had already testified to observing the bruise on defendant's face, the judge permitted questions on what was already introduced at trial; he did not permit defense counsel to elicit additional statements not already introduced in the State's case-in-chief.

A-0254-18

When asked whether he recalled defendant saying her eye was bruised on exiting the car, Trooper Gonzalez testified that he did not. In response, defense counsel asked to play a portion of the MVR to refresh Trooper Gonzalez's recollection. With his recollection refreshed, Trooper Gonzalez testified that the voice heard on the MVR saying "my eye is bleeding" was not defendant's voice, and that defendant was not physically near Trooper Gonzalez at that time. Defense counsel told the judge the response answered his questions.

A criminal defendant is constitutionally guaranteed the right to be "confronted with the witnesses against him," N.J. Const., art. I, § 10, and may cross-examine witnesses to establish or test their credibility, State v. Cabbell, 207 N.J. 311, 328-29 (2011). The control of that cross-examination, particularly cross-examination "tending to test the credibility and trustworthiness of a witness," rests in the trial judge's discretion and we will intervene absent clear error. State v. Castagna, 187 N.J. 293, 309, 312 (2006). Defense counsel was not unreasonably restricted in his line of questioning as he was permitted to elicit from Trooper Gonzalez information about defendant's eye injury. He was able to: refresh the Trooper's recollection and establish the statement was made by Jackson; make the jury aware that Jackson was charged with domestic violence; and argue to the jury about photographs of the eye injury that were admitted into evidence. Because defendant was still able to engage

in cross-examination and bring forth evidence about the eye injury, any mistaken limitation in the cross-examination did not constitute reversible error.

IV

Defendant argues the prosecutor "made numerous improper comments to the jury" during summation that consisted of "virtually every paradigmatic example of what a prosecutor is constitutionally proscribed from doing," all warranting a reversal of her convictions. Defendant specifically refers to the prosecutor's comments that: encouraged the jury to draw negative inferences from defendant's decision not to testify; urged a shifting of the burden of proof onto the defense; and claimed the law did not permit a finding of duress but instead demanded a guilty verdict.

Prosecutors are allowed "considerable leeway," Frost, 158 N.J. at 82, and are "expected to make vigorous and forceful closing argument[s] to jur[ies]," Harris, 141 N.J. at 559, but this leeway is not unlimited. We will reverse when prosecutors overstep their limits or when their arguments are "so egregious" as to deprive the defendant of a fair trial. Frost, 158 N.J. at 83; see also State v. Williams, 244 N.J. 592, 615 (2021) (reversing when prosecutor invited jurors to draw comparison between defendant and extra-evidentiary photos of physical violence from the movie The Shining); State v. Acker, 265 N.J. Super. 351 (App. Div. 1993) (reversing

because prosecutor knowingly made baseless arguments that defendant was intoxicated during a sexual assault of a minor, told jurors to believe all victims if they believed one, and argued the jury's function was to protect young sexual assault victims); State v. Staples, 263 N.J. Super. 602, 623 (App. Div. 1993) (reversing when prosecutor suggested police witnesses are believable because of their profession and acquittal could damage their careers). When reviewing claims of prosecutorial misconduct, we consider: (1) whether defendant timely objected; (2) whether the prosecutor's remarks were promptly withdrawn; and (3) whether the trial court struck the remarks from the record and instructed the jury to disregard them. Frost, 158 N.J. at 83. We also "take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occur[]." State v. Marshall, 123 N.J. 1, 153 (1991). Generally, in the absence of a timely objection, we view remarks challenged on appeal as not being prejudicial. State v. Ramseur, 106 N.J. 123, 323 (1987).

Defense counsel timely objected to one portion of the State's closing arguments, specifically when the prosecutor said:

> [Y]ou also have to ask yourself are any of these facts in dispute at this point? Have you heard any evidence to the contrary? Have you heard any evidence that this wasn't exactly what the defendant was doing?

In objecting, defense counsel said before the jury "I have no burden" and the judge immediately sustained the objection. The judge then called counsel to sidebar and admonished the prosecutor:

> THE COURT: You pointed at [defendant]. She doesn't have to say anything.
>
> [PROSECUTOR]: I know that, Judge.
>
> THE COURT: You made – unintentionally you may have created the impression. All right?
>
> [PROSECUTOR]: I understand, Judge.
>
> THE COURT: All right.

The prosecutor did not withdraw the remarks from the record, nor did the judge strike them. The judge also did not immediately instruct the jury to disregard what the prosecutor said and did; but the defense did not ask the judge to do more.

Later during her closing argument, the prosecutor again alluded to defendant's decision not to testify, first saying there was "[n]o evidence [of duress], not from this witness stand," and later, "[defendant] has something to lose. You didn't hear evidence to the contrary. You didn't hear evidence of duress." On these occasions, defense counsel did not object, nor did the judge give a curative instruction or strike the comments from the record.

A-0254-18

After the prosecutor concluded her closing argument, which was followed by a ten-minute recess, the judge began charging the jury. Early in the charge, the judge instructed about the State's burden of proof, stating among other things that "defendant has no burden of proof to offer any evidence. There's no burden of proof to even be here." Another instruction early in the charge concerned defendant's decision not to testify at trial:

> It is [defendant's] constitutional right to remain silent. You must not consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify. That fact should not enter into your deliberations or discussions in any manner at any time. . . . She is presumed innocent whether or not she chooses to testify.

The judge also instructed the jury that what counsel said in their summations was not evidence and that the jury was to be governed by his instructions on the law.

The prosecutor certainly made improper comments and gestures concerning defendant's decision not to testify on her own behalf. See State v. Irizarry, 270 N.J. Super. 669, 675-76 (App. Div. 1994) (remanding for new trial when prosecutor's statement in closing arguments that State's evidence is not contradicted by defendant was impermissible indirect commentary on the defendant's decision not to testify). As a result, we must determine whether this error was "harmless beyond a reasonable

29

doubt"; if it is not, then reversal of the conviction is required. Cabbel, 207 N.J. at 337-38 (quoting State v. Garcia, 195 N.J. 192, 205 (2008)).

We are satisfied that under all the circumstances the error was regrettable but harmless. We agree the judge should have given a curative instruction on the first occasion. His admonishment to the prosecutor at sidebar wasn't enough because the jury didn't hear it. But what the jury heard was defense counsel's immediate objection to the improper comment and the judge's immediate sustaining of the objection; the jury undoubtedly understood from this that the prosecutor's comment was improper. And the judge's later instructions, which followed soon after the prosecutor's summation, further emphasized for the jury that the prosecutor's suggestion about defendant's failure to testify or provide evidence in support of her duress defense was improper because defendant had the right not to testify and that no inference should be drawn from her silence. The prosecutor's other, later comments were not objected to. We are satisfied that the comments, while improper, were harmless and any negative effect was ameliorated by the judge's charge soon after.

V

Defendant argues in her fifth point that some of the judge's instructions and his responses to questions posed by the jury during their deliberations about the

defense of duress were erroneous. She specifically claims the judge's instructions "improperly suggested to the jury that the defense (as opposed to the State) had a burden of proof for the duress defense" and departed too far from the Model Jury Charge to be sustainable. Her objections were not raised at trial when the instructions were conveyed. In the absence of an objection, we review jury instructions under the plain-error standard. State v. Munafo, 222 N.J. 480, 488 (2015). Plain error will not be found if jury instructions are correct even though there was room for improvement. State v. Tierney, 356 N.J. Super. 468, 481 (App. Div. 2003).

Defendant cites a number of instructions and some of the judge's answers to the deliberating jury's questions that she claims misled the jury. When determining if errors exist in a jury charge, the charge must be reviewed in its entirety for areas of ambiguity and misleading language. State v. Chapland, 187 N.J. 275, 289 (2006). Even if part of the charge, standing alone, appears to be incorrect, we may determine the error does not require reversal if the language of the whole charge adequately conveys the law and is unlikely to confuse or mislead the jury. State v. LaBrutto, 114 N.J. 187, 203-04 (1989).

We agree that at times the judge's explanation about duress could have been clearer, but we reject the contention that any such comments – when examined under

the plain-error standard – could have been misinterpreted by the jury and led it to assume defendant had a burden to be sustained in arguing duress.

As to the charge itself, defendant claims the following comments are erroneous and constituted "a stark departure" from the Model Jury Charge[6]:

> The defense has presented [the] defense of duress for the crime of eluding. Do you find that the State has disproved duress beyond a reasonable doubt? If you say no, we find duress, but they haven't disproved it beyond a reasonable doubt, you're saying the defendant is not guilty of eluding. She was coerced or she acted under duress as I've defined those terms for you.

---

[6] The Model Jury Charge states in part:

> If you find the State has proven beyond a reasonable doubt each element of the offense of _____. The State also has the burden to disprove, beyond a reasonable doubt, the defense of duress.
>
> If you find the State has proven beyond a reasonable doubt each element of the offense charged and that the State has disproved beyond a reasonable doubt the defense of duress, you must find the defendant guilty.
>
> If, however, you determine that the State has failed to prove beyond a reasonable doubt one or more of the elements of _____, or has failed to disprove the defense of duress, you must find the defendant not guilty.
>
> [New Jersey Model Criminal Jury Charges, Duress (N.J.S.A. 2C:2-9) (rev. May 5, 1982).]

32

Defendant emphasizes two phrases – "we find duress" and "[s]he was coerced or she acted under duress as I've defined those terms to you" – as a basis for her contention that the judge conveyed to the jury that she had a burden to sustain. We disagree.

While it may be arguable that the structure of this portion of the jury instruction is somewhat imprecise, it does not amount to plain error when considered with the remainder of the instructions. Elsewhere in the instructions the judge provided a thorough explanation of the duress defense that closely mirrored the applicable model charge set forth in footnote 6 above. The judge explained how the law defines duress and when it is available, and the judge detailed the conditions that the evidence must show before conduct, which is otherwise criminal, may be excused. He heavily emphasized the State's burden of proof in relation to both the defense and the case as whole:

> The State has the burden to prove beyond a reasonable doubt each element of the offenses charged. The State has the burden to disprove beyond a reasonable doubt the defense of duress. If you find the State has proven beyond a reasonable doubt each of the element[s] of the offense charged, and the State has disproved beyond a reasonable doubt the defense of duress, you must find the defendant guilty.
>
> If on the other hand you determine that the State has failed to prove beyond a reasonable doubt one or more of the elements of eluding, or has failed to disprove the offense of duress, you must find the defendant not guilty.

A-0254-18

These instructions not only emphasized the State's burden of disproving duress but were otherwise neutral in their construction and presentation. Though the trial judge could have further "mold[ed] the instruction in a manner that explains the law to the jury in the context of the material facts with the case," and perhaps avoided the necessity for the jury's questions about duress, that failure did not impede the jury's ability to apply the law to the evidence adduced at trial. See State v. Concepcion, 111 N.J. 373, 379-80 (1988).

It should also be noted that defense counsel, the prosecutor, and the trial judge collectively discussed the structure of the jury charge before it was administered. Defense counsel did not object to its contents at that time and had the additional opportunity to voice any concerns about the phrasing of the instructions after the charge was given. This failure to object "gives rise to a presumption" that counsel did not view the instructions "as prejudicial to [the] client's case." State v. McGraw, 129 N.J. 68, 80 (1992); State v. Swint, 328 N.J. Super 236, 257 (App. Div. 2000).

The jury asked several questions related to the definition of duress and, again, it is arguable that some parts of his responses were imprecise. But we are satisfied, particularly in light of the absence of an objection, that the trial judge responded adequately. State v. Savage, 173 N.J. 374, 394 (2002). In challenging the adequacy

of the judge's responses to the deliberating jury's questions, defendant alludes to three such instances.

The jury's first question sought a copy of the written charge or to have the judge re-read the instructions about obstruction and about duress. The judge, who was retired on recall, told counsel he could not provide the jury with a written charge in part because "I don't have a staff [and] have no way of typing it." He, thus, reread the portions of the instructions the jury sought.[7] The judge did not err in so responding to the jury's question. Indeed, the jurors had not said they were confused; they only stated they wanted the instruction again.

Defendant next refers to a question posed by the jury the following day. The jury asked that the judge "explain and elaborate" the following statement and question in the verdict sheet: "The defense has presented the defense of duress to the crime of [e]luding. Do you find that the State has disproved duress beyond a

---

[7] We are mindful that by the time of trial, Rule 1:8-8(b)(2) imposed on trial judges the duty to provide juries in criminal cases with a written copy of the charge, but the rule also stated that this admonition could be "dispense[d] with" if the judge finds "preparation of written instructions will cause undue delay in the trial." As we noted, the trial was presided over by a retired judge who stated he had no staff to assist him in complying with the rule. We also find nothing in the record to suggest that either attorney offered assistance to the creation of the written document the jury sought, and no one objected to the judge's decision not to further attempt to comply with the rule. Under the circumstances, we cannot conclude the judge's inability to comply with Rule 1:8-8(b)(2) constituted reversible error.

reasonable doubt?" In referring to this part of the verdict sheet, the jury specifically asked, first, whether "the State have to prove (sic) – disprove duress beyond a reasonable doubt if the juror does not believe that evidence of the arrest was presented into evidence?" The judge told counsel that the "answer to that would be, no, they don't have to disprove it if they don't find that there's duress in evidence." Defense counsel immediately responded, "Agreed."

The second part of the jury's question asked the judge to "restate the elements of duress"; the judge told counsel he would "recharge them" about duress.

And the third part of the jury's question asked whether "[i]n order to disprove duress, does the State have to disprove all the elements of duress, or [is] disproving a single element adequate?" The prosecutor stated in response that the jury "might be confused as to whether there are elements of duress," but defense counsel responded that "the question is clear" and "the only thing to do is read them . . . the elements of duress." After a further short discussion about the charge's reference to "conditions" to duress and the jury's questions about "elements," the judge determined to reread the duress instructions.

When the jury returned to the court room, the judge answered the first question "no," while slightly recharacterizing the jury's request by substituting the word "arrest" with "duress," i.e.: "Does the State have to disprove duress beyond a

A-0254-18

reasonable doubt if the jur[y] does not believe that evidence of duress was presented into evidence?" In short, the judge correctly instructed the jury that in the absence of evidence of duress that the jury was willing to credit, there would be nothing for the State to disprove beyond a reasonable doubt.

In responding to the other two parts of the question, the judge explained that there are no "elements" to duress, and that "the best way I can explain it to you is to go over it again." He then reread the duress instructions, and provided the following general instruction (it is the emphasized portion that defendant now claims was erroneous even though her attorney did not object at trial):

> So, ladies and gentlemen, if you find that the State has failed to prove the charge of eluding, then you don't get to duress. If you find that the State has proven the elements of eluding, and you find that duress is before you, then the State has the obligation to disprove the [de]fense of duress beyond a reasonable doubt.
>
> [Emphasis added.]

We find nothing confusing or misleading in the judge's responses and reject the argument that the emphasized phrase stated or may have "impl[ied]" that the defense "had to meet a burden of proof before the jury could consider whether the State had met its burden of proof." The jurors were merely told that if they found in the record credible evidence suggesting duress, then it was for the State to disprove duress beyond a reasonable doubt. The judge never said the defense had

37

a burden to either introduce evidence or persuade the jury about the existence of duress.

The same can be said about whether the State "need[ed] to specifically address the criteria regarding duress, regardless of the extent to which the affirmative defense is claimed." The judge – with the input from both the prosecutor and defense counsel – crafted a response that was acceptable to defendant:

> First of all, ladies and gentlemen, <u>if you find evidence of the affirmative defense</u>, the State has to disprove duress beyond a reasonable doubt. Now before conduct, which would otherwise be criminal, can be excused on the ground that such conduct was a direct result of force or threats of force upon the defendant, the evidence must indicate that the following conditions existed at the time: 1. There was use of or threatened use of unlawful force against the person of the defendant, and – it's the conjunctive, ladies and gentlemen, it's not the disjunctive or, it's in the conjunctive and [2.] the force or threatened force would be of such a type that a reasonable – that a person of reasonable firmness in a similar situation would have been unable to resist.
>
> [Emphasis added.]

With regard to the emphasized portion, defendant again argues the judge advised the jury that defendant had the burden of presenting evidence or of persuading the jury that she acted under duress. For the reasons already expressed, we disagree. Defense counsel did not object. And when considered in the context of all the other things

the judge said about duress and the burden of proof, the jury could not have understood any of these instructions to mean that defendant had a burden to do anything. The judge merely instructed the jury that if it found there was evidence in the record about whether defendant may have been acting under duress, then it was the State's burden of disproving it beyond a reasonable doubt.

## VI

Defendant's cumulative error argument invokes our authority to reverse a conviction when "any one of several errors assigned would not . . . warrant a reversal" on its own but considered together "justify the conclusion that defendant was not accorded a fair trial." State v. Orecchio, 16 N.J. 125, 134 (1954); see also State v. Weaver, 219 N.J. 131, 155 (2014). In this sense, we examine the record to determine whether the cumulative effect of the errors "cast sufficient doubt on a verdict to require reversal." State v. Jenewicz, 193 N.J. 440, 473 (2008). Our goal is to ensure that defendant received "a fair trial in which [the] opportunity to defend . . . is fully heard." Id. at 474.

We conclude that the mistakes observed in the prior discussions were insufficient to cause us to question the fairness of the trial's result.

Defendant lastly argues that the sentence was erroneous because the judge incorrectly applied aggravating factor six. N.J.S.A. 2C:44-1(a)(6).[8] Defendant is mistaken.

At sentencing, the prosecution urged application of aggravating factor six because of defendant's prior arrest and pending charges in New York, which related to an alleged fraudulent credit card ring. The judge recognized he did not have all the information relevant to defendant's New York arrest but that he could glean some information from the presentence report, including defendant's explanation "that her felony charges in New York were in connection with something else she got involved in because of another boyfriend" and that "if she completes community service time, her charges would be downgraded."

In State v. K.S., 220 N.J. 190, 199 (2015), the Court found inappropriate a drawing of inferences of guilt from the mere fact that charges were brought against a defendant. See also State v. Tillery, 238 N.J. 293, 326 (2019). In invoking this principle, defendant argues the judge erred in considering her New York arrest when sentencing her on this conviction. The judge, however, did not run afoul of these

---

[8] Aggravating factor six allows the sentencing court to consider "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which [s]he has been convicted."

principles. Far from it. In speaking about the New York arrest, the judge said, "I don't find I can use that information [in the presentence report] as the [p]rosecutor wants me to as supporting [a]ggravating [f]actor [six]." The judge instead looked to defendant's history of traffic infractions and moving violations, and the rest of what "limited information" he had about defendant "as a person," as it related to aggravating factors three and nine. He ultimately determined that aggravating factors three and nine[9] were applicable here, not aggravating factor six. We, thus, find no merit in defendant's argument.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] Aggravating factor three, N.J.S.A. 2C:44-1(a)(3), considers the risk of a defendant committing another offense in the future when determining the appropriate sentence for a defendant who has be convicted, even if a defendant has no prior record. Aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), considers the need for deterring the defendant and others from violating the law.

A-0254-18