**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0683-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NETANEL D. WEISS,
a/k/a TONY WEISS, NATE
WEISS, NETHANEL D.
WEISS, NATANEL D. WIESS,
and NATHANIEL WEISS,

    Defendant-Appellant.

_____

Submitted May 10, 2021 – Decided June 21, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-09-1062, 17-06-0716 and 17-10-1209.

Joseph E. Krakora, Public Defender, attorney for appellant (Scott M. Welfel, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Netanel D. Weiss of third-degree burglary, N.J.S.A. 2C:18-2, and third-degree theft, N.J.S.A. 2C:20-3. The judge granted the State's motion to impose an extended term of imprisonment on defendant as a persistent offender, N.J.S.A. 2C:44-3(a), and, after merging the two counts, the judge sentenced defendant to eight-years' imprisonment with a four-year period of parole ineligibility and restitution. The judge also ordered that the sentence run concurrently to defendant's convictions under counts in two other indictments.

Defendant appeals, arguing the following points:

POINT I

DEFENDANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL DUE TO PERVASIVE PROSECUTORIAL MISCONDUCT. (Partially Raised Below)

POINT II

THE DEFENSE COUNSEL COMMITTED INEFFECTIVE ASSISTANCE OF COUNSEL BY CROSS-EXAMINING BARON WITH AN UNREDACTED TRANSCRIPT OF HER STATEMENT, THEREBY ELICITING THAT DEFENDANT HAD PREVIOUSLY BEEN

INCARCERATED IN A HALFWAY HOUSE. (Not Raised Below)

POINT III

THE CUMULATIVE IMPACT OF THE ERRORS DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (Not Raised Below)

POINT IV

A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT ERRED IN FAILING TO FIND MITIGATING FACTORS ELEVEN AND TWELVE.[1]

Having considered these arguments in light of the record and applicable legal standards, we affirm.

I.

We summarize the trial evidence only as necessary to address the points raised on appeal.

Defendant was indicted with Melissa Baron and charged with the June 2, 2015 burglary of a townhouse apartment in Edison and the theft of personal property of the two victims who shared the residence. The victims returned home from work to find the apartment ransacked with several items missing. Both victims knew Baron since high school, and they hired her to clean their

---

[1] We have eliminated the subpoints in defendant's point headings.

3

apartment after Baron contacted one of them on Facebook and said she needed money because of her heroin addiction. A few weeks before the burglary, the victims noticed some change was missing after one of Baron's cleaning sessions, and they told her they no longer required her services.

Edison Police Detective Steve Todd investigated the burglary. The victims suspected Baron was involved and told Detective Todd of their suspicions. Eventually, after several unsuccessful attempts, one of the victims reached Baron; she admitted being involved, and he relayed this to Detective Todd.

Several days later, Detective Todd contacted Baron and asked her to come to police headquarters. She agreed, and, after being read her Miranda[2] rights, she provided a recorded interview. Baron implicated defendant and told police they used a car that defendant's girlfriend Colleen Allen loaned him. Police located the car at a motel in East Brunswick. When Detective Todd viewed surveillance video taken at the apartment complex on the day of the burglary, he was able to see the same vehicle leaving the scene.

Baron testified before the jury. She pled guilty and was in the Pre-Trial Intervention Program, where she had to comply with conditions, including

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-0683-18

substance abuse treatment. Baron described her intractable heroin addiction and her need for money to support her ten- to twenty-bag per day supply of the drug. She contacted defendant, whom she had known for years, and he loaned her money and eventually allowed her to stay at his East Brunswick motel room.

Baron said it was her idea to commit the Edison burglary, and defendant agreed after she told him they could get some money and "pot" from the apartment. Baron described for the jury in detail how she and defendant committed the burglary and what they took. Eventually, they split some of the money and marijuana they took in the burglary, Baron went alone to Newark to buy more heroin, and she had no more conversations with defendant about the incident. Baron never returned to defendant's motel room.

Detective Todd arrested defendant on June 16, 2015. Defendant waived his Miranda rights and provided a videotaped statement, which the jury saw in redacted form. Defendant admitted his involvement in the burglary with Baron and said they split "coins" and marijuana and he took cash from the apartment.

Defendant did not testify or call any witnesses.

II.

A-0683-18

Defendant cites several incidents that occurred during trial in support of his overarching claim that he was denied a fair trial because of prosecutorial misconduct. Our consideration of the issue is guided by well-known principles.

While prosecutors are entitled to zealously argue the merits of the State's case, State v. Smith, 212 N.J. 365, 403 (2012), they occupy a special position in our system of criminal justice. State v. Daniels, 182 N.J. 80, 96 (2004). "[T]he assistant prosecutor's duty is to prove the State's case based on the evidence and not to play on the passions of the jury or trigger emotional flashpoints, deflecting attention from the hard facts on which the State's case must rise or fall." State v. Blakney, 189 N.J. 88, 96 (2006) (citing State v. Frost, 158 N.J. 76, 82 (1999)). Even if the prosecutor exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith, 167 N.J. 158, 181 (2001) (quoting Frost, 158 N.J. at 83). Applying these standards, the complained-about conduct does not compel reversal.

A.

During her summation, the prosecutor played a portion of defendant's statement in which he told police that his wife, Gitty Weiss, gave him $2000 in

A-0683-18

cash. The prosecutor commented, "Well I guess we discovered who Gi[tt]y is throughout this trial. The defendant's wife didn't testify in this case, but it doesn't —"; defense counsel immediately objected and moved for a mistrial, arguing the prosecutor had shifted the burden of proof to defendant. The judge denied the mistrial motion and gave the following curative charge:

> Ladies and gentlemen, I'm going to interrupt [the prosecutor's] closing argument for just a moment, to highlight a very important thing. And that is that the defendant does not have the burden to prove his innocence in this case. It is the State's burden to prove him guilty beyond a reasonable doubt. The reason I'm pointing it out at this point, is that there may have been some reference to whether or not Ms. Gi[tt]y Weiss testified in this case. And the burden that is on the State, and not on the defendant, there's some meaning as to whether or not somebody calls a witness. The defendant does not have to call witnesses to prove his innocence. It is the State's burden to prove him guilty beyond a reasonable doubt.

Defendant argues before us that the prosecutor's comment shifted the burden of proof by suggesting to the jury that defendant had an obligation to present evidence to establish his innocence and failed to do so. He also claims the judge's curative charge was inadequate. We disagree.

It is axiomatic that a defendant "need not call any witnesses, choosing instead to rely on the presumption of innocence." State v. Hill, 199 N.J. 545, 559 (2009) (citing In re Winship, 397 U.S. 358, 363 (1970)). Only in very

limited situations, and only after following certain procedures, may the prosecutor comment on a defendant's failure to call a witness. State v. Wilson, 128 N.J. 233, 244 (1992).

Here, the prosecutor did not directly comment on defendant's failure to call his wife as a witness, although, under the circumstances, it was highly unlikely the State could have ever called her as a witness. See N.J.R.E. 501(2). Defense counsel's timely objection interrupted wherever the prosecutor intended to tread. More importantly, the judge's curative charge, albeit not clear in all respects, conveyed definitively to the jury that the burden of proof lay solely on the State. "Whether testimony or a comment by counsel is prejudicial and whether a prejudicial remark can be neutralized through a curative instruction or undermines the fairness of a trial are matters 'peculiarly within the competence of the trial judge.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting State v. Winter, 96 N.J. 640, 646–47 (1984)). We find no mistaken exercise of discretion in this case, and any error occasioned by the prosecutor's comment and the judge's charge that followed "was not 'clearly capable of producing an unjust result' and was harmless." State v. Camacho, 218 N.J. 533, 555 (2014) (quoting R. 2:10-2).

B.

8

Defendant next argues that the prosecutor's questioning of Baron and comments the prosecutor made in summation were intended to portray defendant as a "bad person" in violation of N.J.R.E. 404(b). For example, on redirect examination, the prosecutor asked Baron if anyone else was in defendant's motel room on the day of the burglary, and Baron identified a woman she knew only as Danielle. Upon defense counsel's objection, at sidebar, the judge evidenced concern that the prosecutor was seeking to elicit testimony about a "character problem." The prosecutor indicated that Colleen Allen would be testifying the next day, and that she would say she loaned defendant her car believing they were in a romantic relationship. The prosecutor indicated defendant's "multiple liaisons" belied defendant's description of his relationship with Allen in his statement to police. Before Allen was to testify the next day, the judge ruled that her testimony would be limited to the fact that she loaned the car to defendant. Ultimately, defendant stipulated that Allen was the owner of the car, and that she lent it to defendant on the day of the burglary. Allen never testified. This part of defendant's argument requires no further discussion. R. 2:11-3(e)(2).

During summation, the prosecutor played a snippet of defendant's statement to police and made the following remarks:

A-0683-18

When Detective Todd asked the defendant about his relationship with [Baron], and his relationship with [Allen] the woman who owned the Lincoln . . . , his girlfriend, Detective Todd asked what do you describe [Allen] and [Baron] as? His response is, white chick that buys me shit.

. . . .

Well he's laughing at the end there, so I guess he thinks that's funny. But he doesn't say my friend [Baron] that I'm trying to help. He doesn't take the needle out of [Baron's] hand. Maybe that's not his obligation, but he is twice her age, and apparently stone cold sober watching her shoot up in his motel room for weeks. Doesn't take her to rehab. Doesn't try to get her help. You know, I can't find his good intention in the testimony you heard in this case. He's watching her shoot up. He knows she's desperate for a fix. He pries her for information about a place to break into.

There was no objection.

These remarks sought to directly rebut a major theme of the defense, i.e., that defendant was "helping" Baron by taking her in and letting her stay in his motel room, and that he went to the burglary with her to make sure she was safe. During cross-examination of Baron, defense counsel stressed these points and reiterated them early in his summation, telling jurors:

Why would in one way, shape, or form, somebody take responsibility for an offense they didn't commit? That's a good question. I think you can glean from the testimony and from the statement that [defendant] gave, that he was trying to help [Baron]. Maybe he said

10

A-0683-18

> things during that statement that still attempted to help out. I can't answer that.

The prosecutor is permitted to vigorously rebut specific arguments made by defense counsel. See State v. Mahoney, 188 N.J. 359, 376–77 (2006) (holding "prosecutor's comments . . . placed an unforgiving and harsh glare on . . . defense" but were permissible); State v. McGuire, 419 N.J. Super. 88, 145 (App. Div. 2011) ("A prosecutor's otherwise prejudicial arguments may be deemed harmless if made in response to defense arguments."). "A prosecutor is permitted to respond to an argument raised by the defense so long as it does not constitute a foray beyond the evidence adduced at trial." State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001). The prosecutor's remarks were born out by the trial evidence, specifically Baron's testimony. We find no error, much less plain error, in the summation comments.

## C.

One of the victims testified that a ring he received for winning the State wrestling championship was stolen in the burglary. He said the ring was "very sentimental," because it "was . . . a memory and it's going to last forever. It might have not been worth something to somebody else but to me it was worth a lot." In her summation, the prosecutor said: "Well as [the victim] told you, it wasn't the monetary value of the ring that upset him so much, it was the

11

sentimental value. And I'm sure that you have things in your house right now, that maybe don't mean that much to a stranger but —". Defense counsel objected, and there was sidebar. Unfortunately, the transcript reflects the colloquy was "indiscernible," although short, because the prosecutor resumed her summation by describing other things that were taken during the burglary.

Defendant says the prosecutor's invitation to the jurors to put themselves in the victim's place was improper. See, e.g., Geler v. Akawie, 358 N.J. Super. 437, 464 (App. Div. 2003) (holding it improper to invoke the "golden rule" and ask jurors to place themselves in the plaintiff's shoes). Certainly, prosecutors "cannot resort to improper appeal[s] to the jury's emotions," State v. Darrian, 255 N.J. Super. 435, 454 (App. Div. 1992) (citing State v. Williams, 113 N.J. 451, 453 (1988)), or "play on the passions of the jury." Blakney, 189 N.J. at 96. However, the remarks were fleeting and interrupted by defense counsel's timely objection. In her final instructions, the judge clearly reminded the jury that it must decide the case solely on the evidence produced at trial and the comments of counsel were not evidence. Under these circumstances, any error by the prosecutor was harmless. Darrian, 255 N.J. Super. at 454.

In sum, none of the complained-of prosecutorial conduct either singly or collectively justify reversal.

12

## III.

Before the trial began, counsel reviewed defendant's recorded statement and redacted portions in which defendant referred to his prior incarceration and release to a halfway house. The State also agreed to redact portions of Baron's statement, even though defense counsel had not made any request. Two versions of Baron's statement were marked for identification.

During cross-examination of Baron and despite the judge's reminder that he was using the unredacted version of the statement, counsel referred Baron to the transcript, where she explained how she had re-connected with defendant before the burglary. Baron read for the jury: "Well, I hit him up on Facebook like a couple months back, I borrowed $60 from him, because he was back out and he was staying in Trenton in one of those halfway houses." (Emphasis added).

The next day, before Baron continued her testimony, the judge raised the issue with defense counsel, who explained that he had not intended for Baron to read the entire passage. Defense counsel specifically did not request a curative instruction and only asked the court to ensure that there was no further mention of defendant's prior incarceration or release to a halfway house. None occurred.

13

Defendant contends that this demonstrates counsel rendered ineffective assistance. We reject the argument with brief discussion. R. 2:11-3(e)(2).

Ordinarily, we will not review ineffective assistance of counsel (IAC) claims on direct appeal "because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). But when the trial record itself is adequate to evaluate the claim, we may consider the issue on direct appeal. Ibid.

To establish a viable IAC claim, a defendant must establish both prongs of the test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). He must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). Additionally, a defendant must prove he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the

14

outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

We assume arguendo that defense counsel blundered by asking Baron to read from an unredacted copy of her statement that contained the highlighted information, and his performance in this limited regard was deficient. However, defendant fails to meet the second prong of the Strickland/Fritz test, "an exacting standard," State v. Allegro, 193 N.J. 352, 367 (2008), that requires an assessment of the strength of the State's proofs. Pierre, 223 N.J. at 583. Baron's fleeting reference to defendant's past did not affect the outcome of the trial.[3]

## IV.

After granting the State's motion to treat defendant as a persistent offender, the judge considered aggravating and mitigating sentencing factors. She found aggravating factors three, six and nine and accorded them great weight. See N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); (a)(6) (the extent of defendant's prior record); and (a)(9) (the need to deter defendant and others). The judge found no mitigating factors, rejecting defendant's assertion of mitigating factors four and twelve. See N.J.S.A. 2C:44-1(b)(4) (substantial

---

[3] In light of our conclusions, the argument of cumulative error that defendant raises in Point III of his brief requires no discussion. R. 2:11-3(e)(2).

A-0683-18

grounds to excuse defendant's conduct); and (b)(12) (defendant's willingness to cooperate with law enforcement).

Defendant does not contest his eligibility for an extended term, nor does he challenge the judge's findings regarding the aggravating factors. He argues, however, that it was error not to find mitigating factor eleven, see N.J.S.A. 2C:44-1(b)(11) (imprisonment would entail excessive hardship on defendant or his dependents), which was not urged at sentencing, and mitigating factor twelve. We reject the argument and affirm defendant's sentence.

"Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). An appellate court may disturb a sentence only upon "a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

16

Defendant did not ask the judge to apply mitigating factor eleven, although during his allocution, defendant said he was the sole support for his wife and children. However, that alone did not demonstrate defendant's family would experience an "excessive" hardship because of his incarceration. See State v. Hyman, 451 N.J. Super. 429, 460 (App. Div. 2017) (finding lack of evidence to support finding of mitigating factor eleven).

The judge recognized that defendant had cooperated with police in their investigation and apprehension of a defendant in another unrelated case. However, she also noted that defendant quickly disavowed his involvement. This may have justified a finding as to mitigating factor twelve. See State v. Dalziel, 182 N.J. 494, 505–06 (2005) (noting cooperation, "although late in the game," justified finding of mitigating factor with "the only issue [being] the weight to . . . ascribe[] to that mitigating factor"). However, a remand is not required.

In considering the aggravating factors, the judge cited defendant's unbroken criminal record that spanned more than two decades, including twelve prior indictable convictions, six disorderly persons convictions and a contempt conviction in the Family Part. Defendant was on parole when he committed this burglary and theft. The judge sentenced defendant to the mid-range of a

17

permissible extended term, and she ran the sentence concurrent with two other crimes to which defendant pled guilty. The failure to find mitigating factor twelve does not upset the reasoned calculus otherwise used in imposing sentence.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-0683-18